PAVALON, Plaintiff and Respondent, v. FISHMAN and others, Defendants: THOMAS HOLMES CORPORATION, Defendant and Appellant.

*February 3—March 1, 1966.*

For the appellant there were briefs by *Stern & Lee,* attorneys, and *James F. Stern* of counsel, all of Milwaukee, and oral argument by *James F. Stern.*

For the respondent there was a brief by *Godfrey & Kahn,* attorneys, and *David M. Hecht* and *James Ward Rector, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Rector.*

WILKIE, J. The sole issue presented on this appeal is whether the trial court had jurisdiction over the

person of appellant. This question does not turn, as respondent asserts, on whether appellant may ultimately be held responsible in this action,[2] but rather is dependent on whether the requirements of sec. 262.05, Stats., are satisfied. Although respondent contends that the trial court had jurisdiction under either secs. 262.05 (3), 262.05 (4), or 262.05 (5) (e),[3] subs. (3) and (4) are expressly limited to actions involving "injury to person or property."[4] Inasmuch as there has been no personal or property injury alleged in the present case, jurisdiction can only be conferred by sec. 262.05 (5) (e). Under sub. (5) there must be "some degree of consensual privity between the plaintiff and defendant with respect to the action brought" but

[2] Sec. 262.03 (3), Stats., provides in part: ". . . In determining for jurisdiction purposes the defendant's legal responsibility for the acts of another, the substantive liability of the defendant to the plaintiff is irrelevant." See also revision notes to sec. 262.05, Stats., by Professor G. W. Foster, Jr., 30 W. S. A. (1965 pocket part), p. 22.

[3] "262.05 PERSONAL JURISDICTION, GROUNDS FOR GENERALLY. A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 262.06 under any of the following circumstances:

". . .

"(3) *Local Act or Omission.* In any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant.

"(4) *Local Injury; Foreign Act.* In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury either:

". . .

"(5) *Local Services, Goods or Contracts.* In any action which:

". . .

"(e) Relates to goods, documents of title, or other things of value actually received by the plaintiff in this state from the defendant without regard to where delivery to carrier occurred."

[4] See also revision notes, *supra,* footnote 2, at pages 23–29.

". . . it is not necessary that the defendant have done any act within the state; the basis for personal jurisdiction is rather that the defendant has entered some consensual agreement with the plaintiff which contemplates a substantial contact in Wisconsin." [5]

It is also recognized that:

"(i) a claim arising out of a bargaining arrangement made with the defendant by or on behalf of the plaintiff; (ii) a promise or other act of the defendant, made or performed anywhere, which evidences the bargaining arrangement sued upon; and (iii) a showing that the arrangement itself involves or contemplates some substantial connection with the state. . . . No other contacts than those stated are required; an isolated bargaining arrangement giving rise to the action brought is a sufficient basis for jurisdiction. . . ." [6]

Respondent Pavalon was the only person who testified at the hearing on jurisdiction, and the record discloses the following: Seymour Fishman telephoned from Chicago on December 17, 1961, to advise respondent that he was making a "private placement" of Sulray debentures (and the concomitant warrants) to close friends and inquired whether respondent was interested in purchasing a $50,000 parcel. Fishman told respondent about the company, explained that it was a wonderful opportunity, indicated that certain other notables were participating, and offered to send a prospectus. Respondent had been doing business with Fishman, who was a partner in the Divine & Fishman brokerage firm, for a year prior to this time. Respondent expressed interest and received a detailed prospectus on Divine & Fishman, Inc., stationery. Respondent made arrangements for raising

[5] Revision notes, *supra*, footnote 2, at page 24. Cited with approval in *Flambeau Plastics Corp. v. King Bee Mfg. Co.* (1964), 24 Wis. (2d) 459, 464, 129 N. W. (2d) 237.

[6] Revision notes, *supra*, footnote 2, at page 29. Also cited with approval in *Flambeau Plastics Corp. v. King Bee Mfg. Co., supra,* footnote 5, at page 465.

the necessary cash and confirmed the purchase of the note when Fishman called a second time. Fishman sent a letter instructing respondent to mail him a certified check for $50,000 payable to "Sulray, Inc.," which check would be forwarded to Sulray upon the execution of the loan agreement. Respondent mailed the check to Fishman. The check was held by Fishman while Fishman mailed a printed loan agreement to respondent and respondent then signed and returned that agreement to Fishman. Fishman sent respondent a note, the loan agreement signed by Sulray's president, a receipt for the $50,000 payment also signed by Sulray's president, a document for warrants, and opinions by counsel for both Sulray and Fishman accompanied by a letter. The loan agreement contained the following warranty:

"The Company represents and warrants that neither the Company nor any *agent* on its behalf has sold, offered or attempted to dispose of the Subordinated Notes and Warrants . . . . The Company or any *agent* on its behalf shall not sell, offer or attempt to dispose of the Subordinated Notes and Warrants . . . ." (Emphasis added.)

Respondent knew that Fishman had made "private placements" for other companies. Divine & Fishman received a finder's fee of $40,000 from Sulray for handling the entire debenture sale, of which the present transaction was just a part.

Respondent appears to concede—and it is apparent from considering the three required elements discussed above in light of the sparse evidence adduced at the trial—that Sulray cannot be reached *directly* under sec. 262.05 (5) (e), Stats. This would be because (1) no one from Sulray did any bargaining, soliciting, or negotiating with respondent, (2) Sulray did not make any of the promises or representations which gave rise to this action for misrepresentation, and (3) there was no affirmative showing that the loan arrangement con-

templated a substantial connection with the state as far as Sulray is concerned. Rather respondent contends, and the trial court in effect found as a conclusion of law, that there was personal jurisdiction over Sulray because Divine & Fishman was acting as its agent. If this was actually the case, the actions of Divine & Fishman would be attributed to Sulray,[7] and Sulray would come within the purview of sec. 262.05 (5) (e). Consequently, whether or not the trial court had personal jurisdiction of Sulray hinges on the underlying issue of whether Divine & Fishman was acting as the former's agent.

The general rule, in Wisconsin as well as elsewhere, is that brokers, whether employed for a single transaction or a series of transactions, are agents even though their physical activities resemble those of independent contractors.[8] The evidence adduced at the trial, while sketchy, is sufficient to show that Divine & Fishman was an agent within the meaning of this rule. That Divine & Fishman was a brokerage concern (and that Fishman himself was a broker) are facts that operate to invoke the rule initially. Then, too, the fact that the receipt for the $50,000 and the loan agreement were executed by Sulray although mailed to respondent by Divine & Fishman further indicates that Divine & Fishman was acting in the ordinary broker capacity. Finally, the several references to the word "agent" in the loan agreement disclose that Sulray itself felt that the deal was being handled by an agent.

---

[7] "262.03 (3) 'Defendant' means the person named as defendant in a civil action, and where in this chapter acts of the defendant are referred to, the reference attributes to the defendant any person's acts for which acts the defendant is legally responsible. . . ."

[8] *Meyers v. Matthews* (1955), 270 Wis. 453, 467, 71 N. W. (2d) 368; see also Restatement, 1 Agency (2d), p. 10, sec. 1, comment *d*; p. 11, sec. 1, comment *e*; p. 13, sec. 2, comment *b*; p. 80, sec. 14N, comment *a*; and p. 119, sec. 34, comment *b*; 12 Am. Jur. (2d) Brokers, p. 774, sec. 3; p. 795, sec. 30; p. 860, sec. 113, to the same effect.

Appellant counters that respondent, by failing to produce evidence of any of the factors incidental to the relationship, has not proved that an agency existed. It is true that whether or not an agency exists turns on several factors including the extent of control retained over the details of the work,[9] whether the party agreeing to perform is engaged in a distinct occupation or business apart from that of the party desiring the services,[10] and

". . . the place of work, the time of employment, the method of payment, the right of summary discharge of employees, the nature of the business or occupation, which party furnishes the instrumentalities or tools, and the intent of the parties to the contract."[11]

Furthermore, it is undoubtedly true that aside from respondent's own impressions of the relationship existing between appellant and Divine & Fishman and a showing that Divine & Fishman was a brokerage business by nature, no evidence bearing on these criteria was introduced at the hearing. However, what appellant overlooks is that it is necessary to introduce proof with respect to these tests only in a situation where it is not already established by law that a particular relationship is that of agent and principal. For example, a salesman may or may not be an agent.[12] Inasmuch as it is generally recognized that a broker is an agent and inasmuch as the evidence, albeit scant, indicates that the relationship between appellant and Divine & Fishman was not out of the ordinary, the disputed findings of the trial judge

[9] *Kablitz v. Hoeft* (1964), 25 Wis. (2d) 518, 131 N. W. (2d) 346; *Boehck Construction Equipment Corp. v. Voigt* (1962), 17 Wis. (2d) 62, 115 N. W. (2d) 627, 117 N. W. (2d) 372; *Bond v. Harrel* (1961), 13 Wis. (2d) 369, 108 N. W. (2d) 552.

[10] *Kablitz v. Hoeft, supra,* footnote 9; *Boehck Construction Equipment Corp. v. Voigt, supra,* footnote 9.

[11] *Bond v. Harrel, supra,* footnote 9, at page 374. Cited with approval in *Kablitz v. Hoeft, supra,* footnote 9.

[12] *E.g., Bond v. Harrel, supra,* footnote 9.

must be upheld. If appellant believed that the present facts did not fall within the general rule, it should have come forth with evidence to this effect.

The controversy may now be considered on the merits, jurisdiction of the subject matter having been settled by the first *Pavalon Case*. The fact that Divine & Fishman was held by the trial court to be the agent for the limited purpose of acquiring jurisdiction over Sulray is not *res judicata* on the merits of whether the defendant brokerage corporation or Fishman, individually, were acting on behalf of Sulray, or within the scope of their authority, in inducing and making the sale to plaintiff.

*By the Court.*—Order affirmed and cause remanded for further proceedings not inconsistent with this opinion.