ZERBEL, d/b/a JOHN A. ZERBEL & COMPANY, Respondent, v. H. L. FEDERMAN & COMPANY, Appellant.*

*No. 158. Argued September 9, 1970.—Decided October 6, 1970.*
(Also reported in 179 N. W. 2d 872.)

* Motion for rehearing denied, with costs, on December 1, 1970.

For the appellant there were briefs and oral argument by *Morris Karon* of Milwaukee.

For the respondent there was a brief by *Russell R. Stepke* and *Hersh, Stepke, Gollin & Schulz* of Milwaukee, and oral argument by *Russell R. Stepke.*

WILKIE, J.  Two issues are presented on this appeal:

*First.*  Were defendant's contacts with plaintiff sufficient to subject defendant to the jurisdiction of the Wisconsin court under Wisconsin's "long-arm" statute, *i.e.,* sec. 262.05 (5), Stats.?

*Second.*  If so, would such application of the statute to defendant violate due process requirements?

There is no question but that the only contacts had with Wisconsin were those the defendant had with the plaintiff.  Defendant was not licensed to do business in Wisconsin; never had any office or place of business in Wisconsin; never had bank accounts, sold stock, owned property or merchandise in Wisconsin.  It never rented or occupied any space in Wisconsin, or ever listed telephone numbers or solicited sales in this state in any manner whatsoever.  In short, except for its contacts with plaintiff, it never engaged in any activities within this state.  Hence, the first issue is whether these contacts were sufficient to trigger the Wisconsin "long-arm" statute.

The trial court determined that defendant knew plaintiff's office was in Milwaukee, that in the past reports prepared for defendant by the plaintiff were prepared at plaintiff's office in Milwaukee, and that such partial performance of the services in Milwaukee was "authorized and ratified by the defendant," since the final report "was shipped to the defendant at his [Federman's] direction."  Therefore, the court concluded

"[T]he fair and logical inference to be drawn from the evidence is that the services to be performed by the

plaintiff, which were professional in nature, would be performed in part at the plaintiff's professional offices in Milwaukee, Wisconsin. . . .

". . . The service agreement between the parties and the circumstance of its performance and the preparation and delivery of the ultimate work product, establish compliance with the jurisdictional requirements as enacted in sec. 262.05 (5) (a) (b) and (d)."

These sections of the long-arm statute provide:

"(a) Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this state or to pay for services to be performed in this state by the plaintiff; or

"(b) Arises out of services actually performed for the plaintiff by the defendant within this state, or services actually performed for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant; or

". . .

"(d) Relates to goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on his order or direction; . . . ."

We need consider the trial court's findings only with reference to sec. 262.05 (5) (a), Stats., since in our view it was a reasonable inference for the trial court to draw that defendant contracted with plaintiff that services of the plaintiff were "to be performed" in Wisconsin. Grounds for personal jurisdiction having been established under sec. 262.05 (5) (a), it is not necessary to consider the trial court's findings with reference to sec. 262.05 (5) (b) or (d).

Appellant's principal contention on this appeal is that Wisconsin's long-arm statute, if applied to achieve personal jurisdiction here, is violative of due process. This court has stated:

". . . that the statute was intended to provide for the exercise of jurisdiction over nonresident defendants to

the full extent consistent with the requisites of due process of law." [2]

Each case arising under the statute "poses a problem of statutory construction within the constitutional framework and its application to the factual background of each individual case." [3] As to the limits imposed by due-process standards, federal decisions are controlling.

The development of state "long-arm" jurisdictional statutes in this country need not be repeated here. This is adequately covered in Professor Foster's revision notes to sec. 262.05, Stats., and more recently in *Dillon v. Dillon.*[4]

The requirements of due process over nonresidents have changed considerably since *Pennoyer v. Neff,*[5] the 1877 United States Supreme Court decision requiring process on a nonresident to be served within the forum state. In *International Shoe Co. v. Washington,*[6] that court, in 1945, adopted the "minimum contacts" test, stating:

"[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " [7]

This pronouncement was further refined in two subsequent cases: *McGee v. International Life Ins. Co.*[8] and *Hanson v. Denckla.*[9]

---

[2] *Flambeau Plastics Corp. v. King Bee Mfg. Co.* (1964), 24 Wis. 2d 459, 464, 129 N. W. 2d 237.

[3] *Kaye-Martin v. Brooks* (7th Cir. 1959), 267 Fed. 2d 394, 397, certiorari denied, 361 U. S. 832, 80 Sup. Ct. 84, 4 L. Ed. 2d 75.

[4] (1970), 46 Wis. 2d 659, 665–671, 176 N. W. 2d 362.

[5] (1877), 95 U. S. 714, 24 L. Ed. 565.

[6] (1945), 326 U. S. 310, 66 Sup. Ct. 154, 90 L. Ed. 95.

[7] *Id.* at page 316.

[8] (1957), 355 U. S. 220, 78 Sup. Ct. 199, 2 L. Ed. 2d 223.

[9] (1958), 357 U. S. 235, 78 Sup. Ct. 1228, 2 L. Ed. 2d 1283.

In *McGee* the court held that a Texas insurance company whose only contact with California was the mailing of a re-insurance certificate and premium notices into the state and the receiving of the signed certificate and premium payments by mail from California on only one policy had sufficient contact to enable California to constitutionally subject defendant to in personam jurisdiction in that state. The court stated:

". . . It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that state." [10]

While *McGee* considered a single act enough to justify the minimum-contacts test set forth in *International Shoe*, the United States Supreme Court seemed to limit state long-arm jurisdiction in *Hanson*, when a divided court held that Florida could not exercise in personam jurisdiction over a Delaware trustee of a trust executed in Pennsylvania by a Pennsylvania resident who later moved to Florida and died in that state. The court noted the trend toward expanding in personam jurisdiction over nonresidents, but warned that all barriers in this direction had not been lowered between the various states. It stated:

"[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." [11]

The reaction to this pronouncement in *Hanson* has been varied. Professor Foster, as the trial court noted in its opinion, has stated:

". . . The statement is probably too sweeping. It would appear both just and reasonable in constitutional terms for a state to provide a forum for the protection of interests within its borders that were injured by activities

---

[10] *McGee, supra,* footnote 8, at page 223.

[11] *Hanson, supra,* footnote 9, at page 253.

outside the state even though such activities produced no benefits within the forum to the defendant." [12]

Courts, too, have disagreed as to the weight to be given to the *Hanson* pronouncement; [13] however, most courts have attempted to meet its standards, [14] and it would seem that here we must judge the application of Wisconsin's long-arm statute, more particularly sec. 262.05 (5), against the due process requirements of *International Shoe* as modified by both *McGee* and *Hanson*.

In any event, there is little disagreement as to the standards to be met in attempting to reach a nonresident defendant through "long-arm" statutes (as required by *International Shoe, McGee* and *Hanson*) :

" '(1) The nonresident defendant must do some act or consummate some transaction within the forum. . . . A single event will suffice if its effects within the state are substantial enough to qualify under Rule Three.

" '(2) The cause of action must be one which arises out of, or results from, the activities of the defendant within the forum. . . .

---

[12] Foster, *Long-Arm Jurisdiction in Federal Courts,* 1969 Wis. L. Rev. 9, 33.

[13] *E. g., Deveny v. Rheem Mfg. Co.* (2d Cir. 1963), 319 Fed. 2d 124, 128: "While *Hanson* affirms the necessity of a defendant's having such 'minimal contacts' with the forum state, that case in no sense can be taken as increasing the requirements which the court found to be satisfied in *McGee*." However, another court has characterized the requirement pronounced in *Hanson* as "the *sine qua non* for *in personam* jurisdiction." *Southern Machine Co. v. Mohasco Industries, Inc.* (6th Cir. 1968), 401 Fed. 2d 374, 381, 382.

State courts have also expressed the view that *Hanson* has little effect since it did not reverse *McGee* and therefore should be considered as limited by its peculiar facts. *Phillips v. Anchor Hocking Glass Corp.* (1966), 100 Ariz. 251, 413 Pac. 2d 732, 19 A. L. R. 3d 1. *See also: Miller v. Vitalife Corp. of America* (Iowa 1969), 173 N. W. 2d 91.

[14] *E. g., Electro-Craft Corp. v. Maxwell Electronics Corp.* (8th Cir. 1969), 417 Fed. 2d 365, 369; *Taylor v. Portland Paramount Corp.* (9th Cir. 1967), 383 Fed. 2d 634, 641; *Kaye-Martin v. Brooks, supra,* footnote 3, at page 397.

"'(3) Having established by Rules One and Two a minimum contact between the defendant and the state, the assumption of jurisdiction based upon such contact must be consonant with the due process tenets of "fair play" and "substantial justice." If this test is fulfilled, there exists a "substantial minimum contact" between the forum and the defendant. The reasonableness of subjecting the defendant to jurisdiction under this rule is frequently tested by standards analogous to those of forum non conveniens.'" [15]

Applying these standards to the instant case, we are satisfied that all the requirements of due process are met.

*Rule 1.* " 'The nonresident defendant must do some act or consummate some transaction within the forum. . . . A single event will suffice if its effects within the state are substantial enough . . . .'" [16]

Or, as some courts have stated it, in order to fully comply with the requirements of *Hanson*:

"[T]he defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." [17]

It is clear, here, that the defendant caused a consequence in the forum state when it contracted for services to be performed by the plaintiff, which services the trial court could reasonably infer were to be performed in Wisconsin. With offices in Milwaukee and with prior projects having been completed by work done in a simi-

[15] *L. D. Reeder Contractors of Arizona v. Higgins Industries* (9th Cir. 1959), 265 Fed. 2d 768, 773, note 12, citing 47 Georgetown L. J. (1958), 342, 351, 352, where the rules were first stated; *see also: Electro-Craft Corp. v. Maxwell Electronics Corp., supra,* footnote 14; *Southern Machine Co. v. Mohasco Industries, Inc., supra,* footnote 13; *Curtis Publishing Co. v. Birdsong* (5th Cir. 1966), 360 Fed. 2d 344; *Kourkene v. American BBR, Inc.* (9th Cir. 1963), 313 Fed. 2d 769.

[16] *L. D. Reeder Contractors of Arizona v. Higgins Industries, supra,* footnote 15, at page 773, note 12.

[17] *Southern Machine Co. v. Mohasco Industries, Inc., supra,* footnote 13, at page 381, and note 17.

lar manner in Wisconsin, it was reasonable to infer that defendant knew the work would be done by plaintiff in this state.

*Rule 2.* " 'The cause of action must be one which arises out of, or results from, the activities of the defendant within the forum.' " [18]

Here, the cause of action clearly arises from defendant's only contact with Wisconsin: its service contract with plaintiff.

*Rule 3.* Once contact is found, " 'such contact must be consonant with the due process tenets of "fair play" and "substantial justice." . . . .' " [19]

Or:

"[T]he acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." [20]

In determining whether the requirements of "fair play" and "substantial justice" have been met, various factors are to be considered. In *Aftanase v. Economy Baler Co.*[21] Justice BLACKMUN, then circuit judge on the Eighth Circuit Court of Appeals, stated:

". . . We observe, however, that, at one time or another in the opinions, three primary factors, namely, the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts, are stressed, and that two

---

[18] *L. D. Reeder Contractors of Arizona v. Higgins Industries, supra,* footnote 15, at page 774, note 12. All of the cases agree this is essential.

[19] *Id.*

[20] *Southern Machine Co. v. Mohasco Industries, Inc., supra,* footnote 13, at page 381.

[21] (8th Cir. 1965), 343 Fed. 2d 187.

others, interest of the forum state and convenience, receive mention." [22]

And he noted further:

"The supreme court has certainly not indicated that all five of these factors must be present in substantial degree for jurisdiction to be constitutionally effected." [23]

Applying the analysis presented by then Judge BLACKMUN in *Aftanase*:

1. *Quantity.* At minimum, by defendant's own admission, defendant had "two or three" prior contracts with the plaintiff. In each of those prior contracts, plaintiff completed his financial report, similar to the one prepared in this case, in Milwaukee, so it was reasonable for the trial court to infer that this report was also to be prepared in this state.

2. *Nature and Quality of Contacts.* Although this contact with Wisconsin did not have the effect on the commerce of the state as though defendant had taken a share in the state markets by selling or purchasing goods within the state; [24] nor was there any solicitation of business within the state from which it derived profits

---

[22] *Id.* at page 197. Many courts appear, at least, to place greater stress on the state interest involved. *E. g., Curtis Publishing Co. v. Birdsong, supra,* footnote 15, at page 346: "The supreme court has made it perfectly clear that in this type of situation the state which seeks to subject a nonresident to its judicial jurisdiction must have a definite interest in the litigation." *See also: Southern Machine Co. v. Mohasco Industries, Inc., supra,* footnote 13; *Miller v. Vitalife Corp. of America, supra,* footnote 13 (bulk sale of Iowa business). Others have considered the convenience factor important. *E. g., L. D. Reeder Contractors of Arizona v. Higgins Industries, supra,* footnote 15.

[23] *Aftanase v. Economy Baler Co., supra,* footnote 21, at page 197.

[24] *Flambeau Plastics Corp. v. King Bee Mfg. Co., supra,* footnote 2.

from this state,[25] the contact was such that we can conclude that defendant purposely availed "itself of the privilege of conducting activities [in Wisconsin], thus invoking the benefits and protections of its laws." [26]

3. *Source of Cause of Action.* This cause of action arises out of defendant's only contact with Wisconsin.

4. *Interest of Wisconsin in the Action.* Wisconsin has a definite interest in providing a forum for its citizens and in some cases this has been given weight.[27] Although New York seems to have a similar interest in providing a forum for its citizens, it is reasonable to conclude that it is "consonant with the due process tenets of 'fair play' and 'substantial justice'" for Wisconsin to provide a forum for the protection of this plaintiff's interests when they were allegedly injured by activities of this defendant outside the state.

5. *Convenience.* While this factor has rarely been decisive in the cases reviewed, it is frequently considered and was given great weight in *Reeder,* where the Ninth Circuit Court of Appeals, applying "the 'estimate of inconveniences' which Judge LEARNED HAND pioneered in *Hutchinson v. Chase & Gilbert* [(2d Cir. 1930) 45 Fed. 2d 139], which was expressly approved by the supreme court in *International Shoe,*" [28] concluded that the estimate of inconveniences weighed heavily against jurisdiction over a nonresident defendant corporation, but hinted the result might be different if the forum state had "'a manifest interest in providing effective means of redress for its residents.'" [29]

---

[25] *Pavalon v. Fishman* (1966), 30 Wis. 2d 228, 140 N. W. 2d 263.

[26] *Hanson v. Denckla, supra,* footnote 9, at page 253.

[27] *Aftanase v. Economy Baler Co., supra,* footnote 21, at page 197 (tort); *Terasse v. Wisconsin Feeder Pig Marketing Coop.* (La. App. 1967), 202 So. 2d 330, 333.

[28] *L. D. Reeder Contractors of Arizona v. Higgins Industries, supra,* footnote 15, at page 775.

[29] *Id.* at page 776, citing the *McGee Case, supra,* footnote 8.

The balancing of inconveniences in the instant case is difficult to do. Witnesses to the contract will no doubt be found in New York. Plaintiff has only himself and his exhibits in Wisconsin. The judgment plaintiff seeks will require enforcement in New York since defendant has no property in Wisconsin. It would be a matter of convenience to the plaintiff if Wisconsin law were applied in the Wisconsin forum to the contract litigation.

But in the final analysis the evaluation to be given this factor, like the others identified by Judge BLACKMUN in his evaluation, presents a question of the reasonableness of subjecting defendant to Wisconsin jurisdiction. Judge BLACKMUN in his evaluation did not count off one by one the individual factors that gravitate towards jurisdiction or not; in essence the court, under this method of analysis, considers the quality and substance of each factor in reaching its conclusion on whether it is reasonable to subject this nonresident to Wisconsin litigation. As Professor David P. Currie observed in his assessment of the growth and development of the Illinois long-arm statute: [30]

"No magic formula leaps to mind to solve all these cases. In each case all the factors must be considered— among them whether the defendant is buyer or seller; whether he or the plaintiff is in business; who took the initiative; whether the defendant sent agents into the plaintiff's state, and if so under what circumstances. The relative abilities of the plaintiff and the defendant to litigate in a foreign forum may also be relevant . . . . I do not think the difficulty of formulating objective justifications for felt distinctions signifies either that the fairness test is a poor one or that an artificial but simple line should be drawn short of the limits imposed by relevant policies. The essence of due process is that proceedings shall be fair; whether they are fair must be a subjective judgment based on the common sense of the judge. Such judgments must be made in other areas of

[30] Currie, *The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois,* 1963 Ill. Law Forum 533, 577.

constitutional law, such as in determining whether a search or seizure was 'unreasonable.' "

Appellant places heavy reliance on the *Orton Case* [31] decided by the Seventh Circuit Court of Appeals in 1957. In this case, defendant, operating a sole proprietorship in Louisiana, employed one of the plaintiffs, a business consultant, to assist him in the financing of his operations and the incorporation of his business, and employed the other plaintiff, a lawyer, to prepare the articles of incorporation and other papers necessary to his plan. Both plaintiffs were residents of Illinois and had their offices in Chicago. "It appears from the affidavits of the parties that plaintiffs generally rendered the services for which they were employed in the city of Chicago." [32] It is clear from the opinion that defendant employed one plaintiff in New Orleans; it is not clear where defendant employed the other plaintiff, but the court seems to place no great stress on this.

Both plaintiffs did a substantial portion of their work on the project in Illinois, and communicated frequently with defendant and his representatives in Louisiana by telephone and by mail. "Finally, that defendant's sole business contact with the state of Illinois was its dealings with plaintiffs." [33]

Plaintiffs brought suit for money alleged to be due and owing them in the circuit court for Cook county, which was removed to the United States District Court. The district court sustained defendant's motion to quash the complaint on the grounds that there was no jurisdiction under the Illinois "long-arm" statute which requires "the transaction of any business within this state." [34]

In its opinion, rendered before *McGee* and *Hanson,* the Seventh Circuit Court of Appeals emphasized the

[31] *Orton v. Woods Oil & Gas Co.* (7th Cir. 1957), 249 Fed. 2d 198.
[32] *Id.* at page 199.
[33] *Id.*
[34] Sec. 17, ch. 110, Ill. Rev. Stats. 1955.

"minimum contacts" requirement of *International Shoe Co. v. Washington* and noted that in interpreting the Illinois statute the court would apply " 'substantially the same test as is used for due process purposes.' " [35] The court then stated:

"The fact that plaintiffs did most of their actual work in Chicago in accomplishing their assignments seems to us to be a slender thread on which to hang their claim for jurisdiction over defendant in Illinois. We do not believe that defendant had such 'minimum contacts' with the territory of the forum chosen by plaintiffs to subject it to a judgment *in personam*. To do so, would 'offend traditional notions of fair play and substantial justice.'

". . .

"We shall not engage in a further definition of 'the transaction of any business within this state.' It is sufficient here to hold that the performance of the professional services by plaintiffs for the benefit of defendant as herein outlined, standing alone, are insufficient to bring defendant within any reasonable construction of the Act in question. To rule otherwise would be to stretch the doctrine of the International Shoe case to the breaking point, and to expand the Illinois concept of state jurisdiction over nonresidents beyond the limit imposed by due process." [36]

Several facts should be noted:

*Orton* was rendered in 1957 before the trend toward liberal extension of long-arm jurisdiction over nonresidents. The Seventh Circuit is more conservative than other federal courts in these matters.[37] *Orton* was decided before *McGee*, which recognized that the minimum-contact requirements of *International Shoe* could be met by an isolated contact. Furthermore, *Orton* merely interpreted the specific Illinois statute before the Supreme

[35] *Orton v. Woods Oil & Gas Co., supra,* footnote 31, at page 202.

[36] *Id.* at pages 202, 203.

[37] *Supra,* footnote 30.

Court of Illinois made an authoritative interpretation of that statute.[38]

In Wisconsin this court, as noted above, has previously stated that at the time the pertinent provisions of the long-arm statute were adopted it was intended "to provide for the exercise of jurisdiction over nonresident defendants to the full extent consistent with the requisites of due process of law." [39] Extending jurisdiction over this nonresident under the facts of this case under sec. 262.05 (5) (a), Stats., satisfies due process.

*By the Court.*—Order affirmed.

HALLOWS, C. J. (*dissenting*). While the reach of the Wisconsin long-arm statute is long, its application in this case renders the arm too long. I consider the facts to be beyond the statute's reach, to be protected by the due-process clause, and to be ruled by *Hanson v. Denckla* (1958), 357 U. S. 235, 78 Sup. Ct. 1228, 2 L. Ed. 2d 1283. All that can be said for the minimal contacts is that the defendant contracted for the services of the plaintiff which could and probably would be performed in Wisconsin. These services were not in the nature of carrying on the business of the defendant in this state. The plaintiff was an independent contractor and not the defendant's agent. Where the plaintiff did his work and conducted his business was immaterial to the defendant. Consequently, the activities of the plaintiff should not be considered the activities of the defendant in Wisconsin.

[38] *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N. E. 2d 761, as noted in *Jackson v. National Linen Service Corp.* (D. C. Virginia 1965), 248 Fed. Supp. 962, 965; as to effects *see Consolidated Laboratories, Inc. v. Shandon Scientific Co.* (7th Cir. 1967), 384 Fed. 2d 797, 800 *et seq.*

*Orton* was recently cited in *Tommills Brokerage Co. v. Loeb, Rhoades & Co.* (7th Cir. 1969), 411 Fed. 2d 764, 766, but was cited therein only as one of the decisions decided by that circuit court concerning the Illinois long-arm statute and not as precedent.

[39] *Flambeau Plastics Corp. v. King Bee Mfg. Co., supra*, footnote 2, at page 464.

It cannot be said realistically that the nonresident defendant performed an act or consummated a transaction in this forum. Nor can it be said the cause of action arose out of or resulted from the activities of the defendant within the forum. It is the activities of the plaintiff which the majority uses as a basis for jurisdiction. To base personal jurisdiction on such purpose violates fair play and substantial justice, and I think it is entirely unreasonable to subject the defendant to Wisconsin litigation. If the majority decision is sound, then every nonresident who purchases a product made for him in Wisconsin may be sued in Wisconsin.

I respectfully dissent.