Harold WEINER, Plaintiff,

v.

James H. SORENSON, Defendant.

Morris SHECHTMAN, Plaintiff,

v.

James H. SORENSON, Defendant.

Morris SHECHTMAN and Gertrude Shechtman, his wife, Plaintiffs,

v.

J. SHAPIRO COMPANY, a foreign corporation, and Jerome H. Shapiro, Defendants.

Morris SHECHTMAN, Plaintiff,

v.

J. SHAPIRO COMPANY, a foreign corporation, and Jerome H. Shapiro, Defendants.

Harold WEINER, Plaintiff,

v.

J. SHAPIRO COMPANY, a foreign corporation, and Jerome H. Shapiro, Defendants.

Nos. 71-C-474 to 71-C-478.

United States District Court,
E. D. Wisconsin.

Feb. 9, 1972.

On Reconsideration of No. 71-C-476
Feb. 28, 1972.

**398**

Samson, Friebert, Sutton & Finerty, Milwaukee, Wis., for Shechtmans.

Marvin Resnick, Milwaukee, Wis., for Weiner.

Quarles, Herriott, Clemons, Teschner & Noelke (George K. Whyte and Stephen Z. Surridge, on reconsideration), Milwaukee, Wis., for J. Shapiro Co. & Jerome Shapiro.

Reinhart, Boerner, Van Deuren & Norris, Milwaukee, Wis., for Sorenson.

## DECISION AND ORDER

**MYRON L. GORDON, District Judge.**

The plaintiffs in each of the above-entitled actions allege that, as a result of the defendants' solicitations, they purchased various amounts of 6% convertible subordinated debentures of Quarterback Sports Federation, Inc., and Dart Investment Corp. In each case, the plaintiffs assert that the debentures were not registered with the Wisconsin Department of Securities as required by chapter 189 of the Wisconsin statutes (1967); in addition, the plaintiff in the case numbered 71–C–477 contends that the offering which included the Quarterback debentures purchased by him was not registered under the Securities Act of 1933 and that the defendants falsely represented that the Quarterback debentures would be listed on the American Stock Exchange by the late spring of 1969 and would be redeemed until that time. Each plaintiff seeks repurchase by the defendants of the debentures sold to him.

All of the actions were commenced in a state court and were removed by the defendants to this court, pursuant to 28 U.S.C. § 1441; removal jurisdiction is based upon diversity of citizenship. Each of the plaintiffs has moved to remand the actions to the state court, and each of the defendants has moved to dismiss, to transfer, or to stay. The plaintiffs' motions will be considered first.

## MOTIONS TO REMAND

The plaintiffs state that actions involving the same parties and arising out of the same transactions are pending in the circuit court for Milwaukee county and that such actions were filed prior to the commencement of the present ones. They contend that the instant actions were filed to enable them to make the specific assertion that the defendants failed to comply with certain provisions of the Wisconsin securities law, an allegation "inadvertently omitted" from the pleadings in the initial actions.

The plaintiffs argue that the present actions are "supplementary" ones and have no independent existence for removal purposes since they are "continuations of," or were commenced "to add another element to," the previously-filed state court actions. They assert that it is likely that all the actions will be consolidated if the present cases are remanded to the state court, and they argue that retention by this court of the cases now before it will result in "fractionalization" of the lawsuits, inconvenience to the parties, and added expense.

The plaintiffs also state in their briefs that commencement of separate actions, instead of amendment of the complaints in the original state court actions, was necessitated in part by the fact that an appeal has been taken from a decision with regard to jurisdiction in two of the state cases; the state court no longer has jurisdiction to hear a motion to amend, the plaintiffs argue, and the running of the statute of limitations precluded delay until after the resolution

of the appeal. Finally, the plaintiffs in case 71–C–476 declare that the requisite jurisdictional amount is lacking.

The plaintiffs' argument that "supplementary" actions are not generally removable, even though diversity of citizenship and jurisdictional amount are present, finds support in 1A Moore's Federal Practice ¶ 0.157[4.–11], at 176 (1965), where it is stated:

"That an action is in form an independent suit is not determinative. It has been held that the *Bondurant* [v. Watson, 103 U.S. 201, 278, 281, 26 L. Ed. 447 (1880)] doctrine does not warrant removal where the now-plaintiff was in privity with the defendant in the original action and the matter now made the basis of the independent suit could have been pleaded in the prior original action; or, where proceedings at law and equity are distinct, the subsequent suit in equity is to complete or perfect the right adjudged at law."

However, as the defendants point out, the question of whether a suit is "supplementary" arises most often in connection with actions which attempt to enforce or enjoin a prior state court decree. Furthermore, a distinction must be drawn between the proposition under discussion and the "separate and independent claim or cause of action" language of 28 U.S.C. § 1441(c). See 1A Moore's Federal Practice, supra, at 171.

In Roby v. Maine Central R. R., 243 F.Supp. 153 (N.H.1965), two New Hampshire citizens each brought separate actions in a state court against the estate of a New Hampshire citizen and against a railroad, a citizen of Maine, for damages arising out of a single automobile accident. When the railroad removed the actions against it, the plaintiffs moved to remand, arguing—by using the language of § 1441(c)—that none of the four actions had an existence independent from the others. The court denied the plaintiffs' motions, stating (at page 155):

". . . the court concludes that it should not recast the plaintiffs' original pleadings, which presented no barriers to the railroad's removal. To do so would deprive the railroad of a right conferred on it by statute to remove actions against it which involve diversity of citizenship and an amount in controversy exceeding $10,000.

"Plaintiffs were masters of their own pleadings; nothing forced them to bring separate writs against the railroad and against Bedard's estate. It is settled that removability depends to a great extent on how the plaintiff draws his pleadings."

See also Federal Savings & Loan Ins. Corp. v. Quinn, 419 F.2d 1014, 1019 (7th Cir. 1969); but see Fugard v. Thierry, 265 F.Supp. 743 (N.D.Ill.1967).

■ Regardless of the defendants' motives in removing the instant actions, I am of the opinion that the motions to remand (except in case 71–C–476, for reasons discussed below) must be denied. Notwithstanding the plaintiffs' contention that the present cases involve the same parties and events as the original state court actions, I believe that the cases at bar are sufficiently independent to warrant their retention by this court.

■ It is possible, as the plaintiffs contend, that "fractionalization" and added expense will occur; however, the plaintiffs' decision to commence separate lawsuits in the state court set in motion the defendants' statutory right to remove such actions. Furthermore, the fact that the defendants apparently chose not to remove the initial actions in no way affects their right to have the present actions heard by this court. Adams v. Western Steel Buildings, Inc., 296 F.Supp. 759, 761 (Colo.1969).

■ As already noted, the plaintiffs in case 71–C–476 argue that the amount in controversy does not exceed "the sum or value of $10,000, exclusive of interest and costs." 28 U.S.C. § 1332. The complaint in that case alleges that each of the two plaintiffs purchased $5,000 in 6% convertible subordinated debentures of Dart Investment Corp. The plaintiffs ask that the defendants "be ad-

judged to repurchase said . . . debentures for the sum of Ten Thousand Dollars ($10,000)."

The defendants argue that, because the plaintiffs purchased "6% convertible subordinated debentures," "if repurchase were to be required, Plaintiffs would be entitled to the face amounts aggregating $10,000, plus accrued interest at the contractual rate of 6% to date of such repurchase." Since the 6% interest is "exacted as the agreed upon price for the hire of money," and not "imposed as a penalty for delay in payment," the defendants contend that the amount in controversy exceeds $10,000 and that this court has jurisdiction.

The defendants' argument ignores the actual language of the ad damnum clause of the complaint; the plaintiffs simply seek repurchase of the debentures "for the sum of Ten Thousand Dollars." In Powers v. Fultz, 404 F.2d 50, 52 (7th Cir. 1968), the court stated:

"We are of the view that plaintiff's allegation with respect to the existence of the requisite jurisdictional amount and the prayer for judgment combine to constitute at most a defective allegation of the existence of diversity jurisdiction. The limitation of the principal sum of the judgment sought to $10,000 is entirely consistent with the allegations of the complaint with respect to the amount of the gift ($10,000) intended to be made. If plaintiff had intended to assert a claim for $10,081.25 based on the defendant-appellee's withdrawal of that amount from the account (the $81.25 apparently represents interest . . .) the plaintiff should have amended his complaint to assert such a claim . . . . And the complaint sought recovery of but $10,000 with interest thereon from a specific date. No claim in excess of $10,000, exclusive of interest and costs, was asserted."

The motion to remand case 71–C–476 to the state court will be granted.

## MOTIONS TO DISMISS

■ All of the defendants were served with process in Minnesota, and each has filed a motion to dismiss, pursuant to Rule 12(b) (2), Federal Rules of Civil Procedure, on the basis that this court lacks personal jurisdiction over him. The motions are accompanied by the affidavits of the individuals named as defendants in each case.

The affidavits of Jerome Shapiro state that the J. Shapiro Co. is not qualified to do business in Wisconsin, "has at no time employed any salesmen, dealers, officers, directors, stockholders, agents, employees or other representatives located in the State of Wisconsin," and owns no real or personal property in Wisconsin. Mr. Shapiro also avers that none of the debentures involved in the present actions were advertised for sale in the state of Wisconsin and that "neither affiant nor any other employee or agent of Defendant, J. Shapiro Co., solicited orally or in writing" any of the plaintiffs in an attempt to sell the debentures.

The defendant James Sorenson declares in his affidavits that he knew the plaintiffs and met with them on several occasions in Minneapolis where the purchase of Quarterback debentures by the plaintiffs was arranged. After the plaintiffs made a partial payment for the debentures, they returned to Milwaukee and sent the balance due to the offices of Quarterback Sports Federation, Inc., in Minneapolis; the debentures were then mailed by Quarterback to the plaintiffs.

Mr. Sorenson asserts in both affidavits that:

"Neither affiant nor anyone on his behalf solicited plaintiff or anyone else in the State of Wisconsin to purchase Convertible Subordinated Debentures of Quarterback Sports Federation, Inc., and neither affiant nor anyone else on his behalf sold said debentures to plaintiff or anyone else in the State of Wisconsin based upon so-

licitations within the State of Wisconsin by affiant or anyone acting on his behalf."

In addition, Mr. Sorenson avers that the debentures were mailed by the Quarterback corporation to the plaintiffs and that neither "Quarterback Sports Federation, Inc., nor Dart Investment Corporation did business in the State of Wisconsin nor were they licensed to do business in the State of Wisconsin."

Copies of affidavits of the plaintiffs Morris Shechtman and Harold Weiner, on file in the state court, have been submitted in opposition to the defendants' motions to dismiss; such affidavits contradict the defendants' assertions that the defendants' contacts with the forum state were isolated and insubstantial. The plaintiffs also have submitted copies of a decision written by the state court before which two of the state actions are pending; the state court had consolidated actions brought by the Shechtmans and Mr. Weiner against Mr. Shapiro and the J. Shapiro Co. and had conducted a jurisdictional trial pursuant to § 262.16(3), Wis.Stats. The state court concluded that, as to Mr. Shapiro and the J. Shapiro Co., the transactions in question "satisfied the minimum contact test required for the exercise of jurisdiction within the meaning of Sec. 262.05(5), Wis.Stats." The plaintiffs contend that, insofar as this court is concerned with jurisdiction over Mr. Shapiro and the J. Shapiro Co., the state court decision constitutes "the law of the case."

The defendants in cases 71–C–477 and 71–C–478 argue that this court is not bound by the state court decision and contend that this court is free to consider independently the question of whether jurisdiction is appropriate under Wisconsin's long arm statute, § 262.05, Wis. Stats. Because they challenge the exercise of jurisdiction on due process grounds, the defendants assert that "as to constitutional issues a state court decision is not *res judicata* as to a federal court."

There may be some question as to the propriety of this court's reaching a contrary conclusion on the factual issues already resolved by the state court as between the same parties and with regard to the same transactions. See Stoner v. New York Life Ins. Co., 311 U.S. 464, 467, 61 S.Ct. 336, 85 L.Ed. 284 (1940); 1B Moore's Federal Practice ¶ 0.404 [7], at 521 (1965). However, this question is academic here because it is my opinion that the state court determination is entirely correct, insofar as it bears upon the question of jurisdiction over Mr. Shapiro and the J. Shapiro Co. in cases 71–C–477 and 71–C–478.

The parties agree that jurisdiction over the defendants, if present at all, must be found within the terms of § 262.05(5), which provides, in part:

"A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to § 262.06 under any of the following circumstances:

. . . . . .

"Local services, goods or contracts. In any action which:

"(a) Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this state or to pay for services to be performed in this state by the plaintiff; or

"(b) Arises out of services actually performed for the plaintiff by the defendant within this state. . . . ; or

"(c) Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive within this state or to ship from this state goods, documents of title, or other things of value; or

. . . . . .

"(e) Relates to goods, documents of title, or other things of value actually received by the plaintiff in this state from the defendant without regard to where delivery to carrier occurred."

It is not necessary to restate the facts detailed in the state court opinion and asserted in the parties' affidavits. While the affidavits evidence a dispute as to the number and quality of the contacts had by Mr. Shapiro and the J. Shapiro Co. with Wisconsin, I am satisfied that those defendants are amenable to suit in Wisconsin, pursuant to § 262.05(5), Wis.Stats. The testimony taken by the state court at the jurisdictional trial, and summarized in the court's written decision, demonstrates that the activities of Mr. Shapiro and the J. Shapiro Co. in Wisconsin were of such a nature as to subject them to the jurisdiction of this court. Furthermore, no purpose would be served by requiring the submission of additional affidavits or the taking of fresh testimony. Cf. Unicon Management Corp. v. Koppers Co., 38 F.R.D. 474 (S.D.N.Y.1965); United States v. Montreal Trust Co., 35 F.R.D. 216 (S.D.N.Y.1964).

A similar result must be reached with respect to the defendant James Sorenson. Although Mr. Sorenson argues that his affidavits are uncontroverted, Mr. Shechtman's state court affidavit, referred to above, sets forth a number of Wisconsin-related contacts sufficient, I believe, to bring Mr. Sorenson within this court's ambit. Moreover, I decline to adopt the plaintiffs' suggestion that a resolution of Mr. Sorenson's motion to dismiss be deferred pending the decision of a state court before which a jurisdictional trial with respect to Mr. Sorenson was conducted.

The fact that Mr. Sorenson did not personally mail the debentures to the plaintiffs in Milwaukee is not determinative of the issue of jurisdiction; it is clear that the debentures were sent at his direction and pursuant to an agreement reached with the plaintiffs. In addition, Mr. Sorenson does not dispute Mr. Shechtman's statement that he met Mr. Shechtman in Milwaukee in the summer of 1968 to discuss investment by the plaintiff in a corporation called Viking Quarterback. Similarly undisputed are Mr. Shechtman's assertions that he received several telephone calls from Mr. Sorenson in 1968 regarding the underwriting and sale of stock in the Quarterback East corporation.

I conclude that Mr. Sorenson has had "certain minimum contacts" with Wisconsin so that assertion of jurisdiction over him is consonant with "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Furthermore, Mr. Sorenson's agreement to send the debentures to the plaintiffs in Milwaukee brings him within the scope of § 262.05(5) (c) or (e).

The quality of Mr. Sorenson's contacts with the forum state presents the greatest difficulty in determining whether he may be subjected to jurisdiction; however, I find that the contacts were of such a nature that "the defendant purposely availed . . . [himself] . . of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1957). See Zerbel v. H. L. Federman & Co., 48 Wis.2d 54, 61, 179 N.W.2d 872 (1970); Cf. Balistrieri v. O'Farrell, 324 F.Supp. 151 (E.D.Wis.1971). The defendants' motions to dismiss will be denied.

## MOTIONS TO TRANSFER OR TO STAY

The defendants ask this court to transfer the present actions to the United States district court for the district of Minnesota, pursuant to the provisions of 28 U.S.C. § 1404(a); in the alternative, they have moved to stay the actions until criminal actions pending against Mr. Shapiro and Mr. Sorenson are withdrawn and until the plaintiffs are precluded by a statute of limitations from causing criminal complaints to be issued against the defendants.

The defendants state that criminal complaints were issued against them in Milwaukee county at the plaintiffs' behest; they assert that they are subject to arrest if they enter Wisconsin to defend in the cases at bar and that the criminal actions were commenced solely

as a means of enforcing the plaintiffs' civil claims. The defendants argue that a requirement that the instant actions proceed in this court without delay will deprive them of due process of law.

The defendants also seek transfer under the doctrine of forum non conveniens. They contend—and the plaintiffs agree—that the district of Minnesota is a district "in which the action might have been brought." They also argue that most of their potential witnesses are located in Minnesota and that Minnesota would provide the most convenient forum.

The defendants cite several cases in which courts have stayed civil actions pending the outcome of related criminal proceedings. See Paul Harrigan & Sons v. Enterprise Animal Oil Co., 14 F.R.D. 333 (E.D.Pa.1953); National Discount Corp. v. Holzbaugh, 13 F.R.D. 236 (E. D.Mich.1952). Furthermore, it is entirely possible that the defendants may have to assert their fifth amendment privileges if compelled to enter this state to defend in the present suits.

Notwithstanding the difficulties presented by the outstanding criminal complaints and warrants, I believe that the defendants' motions to transfer or to stay must be denied. To hold the cases at bar in abeyance may result in an impasse under which neither the civil actions nor the criminal ones will proceed. If it subsequently develops that maintenance of the civil actions will interfere with the criminal trials or with the defendants' preparations for such trials, this court can fashion appropriate relief at that time. United States v. Simon, 373 F.2d 649, 654 (2d Cir. 1967), cert. granted sub nom. Simon v. Wharton, 386 U.S. 1030, 87 S.Ct. 1485, 18 L.Ed.2d 591 (1967), vacated as moot 389 U.S. 425, 88 S.Ct. 577, 19 L.Ed.2d 653 (1968). Likewise, the assertion by the defendants of their fifth amendment rights is a circumstance with which this court and the plaintiffs will contend if and when such assertions are made. In addition, however, the plaintiffs argue that the defendants' right to raise fifth amendment protections already may have been waived by the defendants' statements in their affidavits and during the taking of depositions and testimony in Minneapolis and Milwaukee.

In United States v. Simon, supra, 373 F.2d at 653, the court stated:

"We cannot agree that 'civilized standards of procedure and evidence,' McNabb v. United States [318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1940)] . . . at 340 [63 S. Ct. at 612] . . . require that a witness under indictment be given the option of nonappearance in any proceedings in related civil or criminal cases until his own trial is concluded."

See also United States v. Birrell, 276 F. Supp. 798, 812 (S.D.N.Y.1967).

A district court has discretion in determining whether a motion to transfer should be granted. Amis Construction Co. v. Pressed Steel Tank Co., 279 F. Supp. 83 (E.D.Wis.1968). "It is clear that a plaintiff's choice of forum is to be disturbed only upon a clear showing by the moving party that the transferee forum would be more convenient and that the proposed transfer would be 'in the interest of justice.'" McGraw-Edison Co. v. United States Fidelity & Guaranty Co., 322 F.Supp. 1049, 1051 (E.D.Wis.1971).

In my opinion, the defendants have not shown that trial in this district will result in such inconvenience or expense as to warrant upsetting the plaintiffs' selection of the state of Wisconsin as the place of trial. While the defendants argue that most of the necessary witnesses reside in Minnesota, they are not specific about the number or identity of the witnesses they plan to call upon the trial of the present cases; indeed, it is possible that the plaintiffs will have numerous witnesses who will be called from Wisconsin and Milwaukee.

Therefore, it is ordered that the plaintiffs' motion to remand case 71–C–476 be and hereby is granted; it is also ordered that the plaintiffs' other motions to remand be and hereby are denied.

It is further ordered that all of the defendants' motions be and hereby are denied.

On Motion for Reconsideration of
No. 71–C–476

The defendants have moved, pursuant to Rule 60(a), Federal Rules of Civil Procedure, for reconsideration of this court's order of February 9, 1972, remanding the above-entitled action to the state court. The action was remanded on the basis of a determination that the amount in controversy does not exceed "the sum or value of $10,000, exclusive of interest and costs," as required in diversity cases by 28 U.S.C. § 1332.

■ The plaintiffs seek the repurchase by the defendants of 6% convertible subordinated debentures "for the sum of Ten Thousand Dollars ($10,-000)"; the defendants argue, however, that this court overlooked "paragraph 3 of the ad damnum clause of the complaint wherein the plaintiffs ask 'FOR such other or further relief as the Plaintiffs may be entitled to in the premises.'" Because of paragraph 3, the defendants contend that if repurchase were required, the plaintiffs also "would be entitled to accrued interest at the contract rate of 6% to the date of such repurchase." The defendants further assert that this court's reliance on Powers v. Fultz, 404 F.2d 50 (7th Cir. 1968), was misplaced.

■ The "party alleging compliance with the jurisdictional prerequisites of the district courts has the burden of proving them." DeLorenzo v. Federal Deposit Ins. Corp., 259 F.Supp. 193, 196 (S.D.N.Y.1966). In the present action, that burden falls upon the defendants. See 1 Moore's Federal Practice ¶ 0.92 [3.–2], at 840 (1964). Furthermore, the grant of jurisdiction is to be strictly construed and, "where jurisdiction is doubtful," the court has a duty to remand. Brown v. Niagara Fire Ins. Co., 132 F. Supp. 509, 510–511 (W.D.Mo.1955). Notwithstanding the plaintiffs' generalized demand for "such other or further relief," I find that the defendants have not met their burden of demonstrating that the amount in controversy exceeds $10,000.

The defendants have cited Brainin v. Melikian, 396 F.2d 153 (3rd Cir. 1968),

in support of the proposition that interest which is an "integral part of the aggregate amount of damages claimed" may be included in fixing the jurisdictional amount. It has also been held that the interest which is excluded by § 1332 is interest which results "solely by virtue of a delay in payment." Regan v. Marshall, 309 F.2d 677, 678 (1st Cir. 1962). See also Richie v. Richie, 196 F.Supp. 592, 594 (E.D.N.Y.1960); but see Fritchen v. Mueller, 27 F.2d 167 (D.C. Kan.1928); cf. Athan v. Hartford Fire Ins. Co., 73 F.2d 66, 67 (2d Cir. 1934).

In my opinion, the relief sought by the plaintiffs in the instant action involves the specific sum of $10,000, and there is nothing presently before the court which affirmatively demonstrates that the plaintiffs ultimately will recover anything more than the amount which they expended upon the debentures. The defendants urge that it must appear "to a legal certainty" that the claim is really for less than the jurisdictional amount to justify dismissal. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Parker v. Erie-Lackawanna System, 393 F.2d 229, 231 (7th Cir. 1968). However, an examination of the complaint and the defendants' petition for removal does not disclose that the plaintiffs, if they prevail, will be entitled as a matter of right to anything more than repurchase of the debentures for $10,000.

Powers v. Fultz, supra, 404 F.2d at 52, states that where "the action is for a money judgment the 'sum' claimed controls the existence of the requisite jurisdictional amount if the claim is apparently made in good faith." While the relief requested in the case at bar differs somewhat from that sought in *Powers*, it may be noted that the complaint in *Powers* specifically sought $10,000 "together with interest on the aforesaid principal amount of the joint and survivorship account." In Brainin v. Melikian, supra, the court stated that the plaintiff sued the endorsers of the note involved "for $10,324.44, the principal amount of the note, plus the 8% interest

therein fixed." In the case at bar, the plaintiffs have made no demand for the 6% interest which the debentures in question allegedly pay. I do not regard their request for "other or further relief" as the equivalent of an express demand for interest.

Finally, each of the two plaintiffs purportedly purchased debentures for $5,000. Although the issue is not raised by the parties, there is a doubt that the plaintiffs are permitted to aggregate their individual claims for $5,000 to reach the jurisdictional amount. See Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); Vroenen v. Beaunit Corp., 305 F.Supp. 688 (E.D. Wis. 1969); Riccardi v. United States Fidelity & Guaranty Co., 215 F.Supp. 687 (W.D.Mo.1963); Annot., 2 A.L.R. Fed. 18 (1969). However, in light of the foregoing discussion, I do not find it necessary to confront the issue of whether, in fact, the present action involves an improper aggregation of claims.

Therefore, it is ordered that the defendants' motion for reconsideration be and hereby is denied.