STATE, Respondent, v. ADVANCE MARKETING CONSULTANTS, INC., and another, Appellants.

*No. 280. Argued November 27, 1974.—Decided February 17, 1975.*
(Also reported in 225 N. W. 2d 887.)

For the appellants there was a brief by *Thomas C. O'Brien* of Chicago and *Walther & Halling* of Milwaukee, attorneys, and *David L. Walther* and *Robert Arthur Melin* of Milwaukee, of counsel, and oral argument by *Mr. O'Brien* and *David B. Feingold* of Chicago.

For the respondent the cause was argued by *William C. Wolford,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

DAY, J.   The question raised on this appeal is whether or not the trial court had jurisdiction of the defendant Howard Ginsburg, an Illinois resident, in an action brought by the state of Wisconsin for fraudulent advertising.   The appellants, Advance Marketing Consultants, Inc. (Advance Marketing) and Howard Ginsburg, appealed from the order of the trial court entered on December 19, 1972, denying Mr. Ginsburg's motion to dismiss the action as to him for lack of personal jurisdiction.

The action was commenced by the state of Wisconsin on September 13, 1971, by the service in the state of Illinois of a summons and complaint on Advance Marketing Consultants, Inc., and Howard Ginsburg, individually and as an officer of the corporation.   The complaint alleged violations of sec. 100.18 (1), Stats., by the defendants in

their engaging in the use of untrue, deceptive, and misleading advertisements, statements, and representations.[1]

[1] "100.18 **Fraudulent advertising.** (1) No person, firm, corporation or association, or agent or employe thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association, or agent or employe thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

". . .

"(11) (a) The department of agriculture shall enforce this section. Actions to enjoin violation of this section or any regulations thereunder may be commenced and prosecuted by the department in the name of the state in any court having equity jurisdiction. This remedy is not exclusive.

"(d) The department or the department of justice or any district attorney, upon informing the department of justice, may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction any violation of this section. The court may in its discretion, prior to entry of final judgment, make such orders or judgments as may be necessary to restore to any person any pecuniary loss suffered because of the acts or practices involved in the action, provided proof thereof is submitted to the satisfaction of the court. The department of justice may subpoena persons, require the production of

Advance Marketing appeared generally and a judgment was entered against it. The judgment enjoined Advance Marketing from certain specified fraudulent advertising practices regarding distributorship contracts and also awarded pecuniary damages to five Wisconsin residents who had lost money due to reliance on fraudulent misrepresentations made by Advance Marketing. Mr. Ginsburg filed a special appearance and objected to the jurisdiction of the court over him personally. In support of his objection, Mr. Ginsburg filed an affidavit stating that he had at no time been in the state of Wisconsin in connection with any business activities of Advance Marketing.

A jurisdictional trial pursuant to sec. 262.16 (3), Stats.,[2] was held on February 16, 1972, on the issue of whether the trial court had personal jurisdiction over Mr. Ginsburg. Only one witness was called at this trial, Mr. Ervin R. Beck. Mr. Beck had executed an affidavit which was used by the state in opposition to Mr. Ginsburg's motion to dismiss for lack of personal jurisdiction. The affidavit was not introduced as an exhibit in the

books and other documents, and may request the department to exercise its authority under par. (c) to aid in the investigation of alleged violations of this section."

[2] "262.16 Raising objection to personal jurisdiction, general appearance. . . .

"(3) JURISDICTION ISSUES TRIED TO COURT. All issues of fact and law raised by an objection specified in sub. (2) shall be tried to the court without a jury in advance of any issue going to the merits of the case. If, after such a hearing on the objection, the court decides that it has jurisdiction, the case may proceed on the merits; if the court decides that it lacks jurisdiction, the defendant shall be given the relief required by such decision. Such decision upon a question of jurisdiction, shall be by order which is appealable. The raising of such objection and the making of such a stipulation may be called a special appearance, but the effect of the objection or appearance is limited to that specified in sub. (2)."

trial; however, the record shows it was shown to the trial judge and it is also made part of the record on appeal. At the trial, Mr. Ginsburg's attorney called Mr. Beck as a witness, who testified that he had known Mr. Ginsburg since the summer of 1968, "as the individual who operated Advance Marketing." He stated he had been doing business with Advance Marketing since approximately September, 1968. He entered into a contract with Advance Marketing and during that time he had sent checks to them. He came in contact with Advance Marketing by answering an ad in the Wall Street Journal in the summer of 1968 and went to Chicago in response to a letter from Advance Marketing asking him to come for an interview. He was interviewed at Advance Marketing's home office by Jack Lang, a salesman for the company. Mr. Beck testified he traveled to Chicago three or four times for interviews and was introduced to Mr. Ginsburg at one of the meetings in Chicago. In August of 1968, Mr. Ginsburg, his wife, and an attorney representing either Mr. Ginsburg or Advance Marketing, came to Milwaukee and spent six or seven hours with Mr. and Mrs. Beck at their home in Milwaukee; one to one and one-half hours of this time was spent discussing business. Mr. Beck was presented with a contract at that time; he read the contract, had various questions about it, received answers respecting it from Mr. Ginsburg and from the attorney. Mr. Beck did not sign the contract that day but asked to have his attorney look at it. Shortly thereafter he signed a different contract with Advance Marketing in Chicago and Mr. Ginsburg was also a signatory to that contract. The contacts which Mr. Ginsburg and Mr. Beck had in Wisconsin following the signing of the contract were social and not related to business.

Following this testimony, the record indicates that the court granted Mr. Ginsburg's motion to dismiss for lack of personal jurisdiction. On February 23, 1972, however,

the trial court issued an order sua sponte vacating the previous order to dismiss and ordered the parties to file briefs. On December 19, 1972, the trial court issued findings of fact and conclusions of law and entered an order denying Mr. Ginsburg's motion to dismiss.

In its findings of fact the trial court found:

"That the act of the defendant, Howard Ginsburg, at the conference in the Beck home in promoting a distributor's agreement was a motivating and substantial factor which resulted in the execution of a distributor contract which bore a direct relationship to the State of Wisconsin."

In its conclusions of law, the trial court stated:

"4. That the sole business contact made by the defendant, Howard Ginsburg, in the State of Wisconsin bears a direct relationship to the cause of action asserted by the State of Wisconsin in this action.
". . .
"8. That what the defendant, Howard Ginsburg, did in the State of Wisconsin in promoting this contract warrants the conclusion that the defendant, Howard Ginsburg, was engaged in a business activity in the State of Wisconsin which bore a substantial relationship to the subject matter of this litigation."

Mr. Ginsburg first contends it was error to require him to assume the burden of proof at the trial on the personal jurisdictional question. At the hearing, the trial court stated, "Since you challenge the jurisdiction, I assume you have the burden." Mr. Ginsburg's attorney accepted the burden without objection. However, he did ask to call Mr. Beck as an adverse witness; the court denied this request and said he would have to call him as his own witness. The court also refused to let the attorney cross-examine Mr. Beck. However, the record is clear that he was permitted to ask leading questions. The burden in a jurisdictional hearing is on the one claiming jurisdiction.

This court recently held in *Afram v. Balfour, Maclaine, Inc.* (1974), 63 Wis. 2d 702, 707, 708, 218 N. W. 2d 288, "It is error to require a defendant objecting to jurisdiction to show the nonapplicability of the Wisconsin long-arm statutes." The court in that case stated the defendant should not be required to prove a negative, that is, that there is no jurisdiction. The trial court there made no finding of fact or conclusion of law, and this court said it was compelled to review what the trial court did as a conclusion of law and then stated, "This court, however, is one of appellate jurisdiction only, and we will resolve factual matters only when they are undisputed or susceptible to proof by judicial notice." The court in *Afram* then did examine the facts which were uncontested. In the instant case, however, the trial court wrote a memorandum decision and in addition made findings of fact and conclusions of law, and this court must examine the trial court's findings of fact and conclusions of law and such other uncontested facts as can be adduced from the record to determine whether the evidence is sufficient to warrant a finding of personal jurisdiction over the defendant Mr. Ginsburg.

The allegations of the complaint in the instant case are not to be considered as evidence tending to establish jurisdiction except for the limited purpose of determining the type of action. *Pavalon v. Thomas Holmes Corp.* (1964), 25 Wis. 2d 540, 547, 131 N. W. 2d 331.

Counsel for Mr. Ginsburg in his brief states that the complaint does not allege a cause of action against Mr. Ginsburg personally. We disagree. The complaint, in paragraph 10 stating "that defendants will continue to engage in the aforesaid violations of Wisconsin law . . . ," refers not merely to future conduct of the defendants, as counsel argues, but includes past illegal conduct described in the complaint. The word "continue," according to Webster's Third New International Dic-

tionary (unabridged), p. 493, means: ". . . keep up or maintain esp. without interruption a particular condition, course, or series of actions . . . ." The word "defendants" in the complaint includes Mr. Ginsburg. It is not necessary that jurisdictional facts be alleged in the complaint. The complaint in this case clearly alleges wrongdoing by Advance Marketing, and the testimony at the trial was that Mr. Ginsburg was "the individual who operated Advance Marketing." Acts of a corporation may be imputed to individuals where control is shown. *Flakall Corp. v. Krause* (1955), 269 Wis. 310, 311, 70 N. W. 2d 8.

In *Pavalon,* this court said, pages 544, 545:

". . . It is appellant's position that since allegations of the complaint are insufficient to show the necessary minimal contacts between appellant and Wisconsin the circuit court did not obtain personal jurisdiction over appellant by service of the summons and complaint upon it outside of the state.

"There are two fatal defects to appellant's position. First, there is no requirement that a complaint must state the facts necessary to give the court personal jurisdiction over the defendant if service of the summons is made upon defendant otherwise than by personal service within the state. . . . a court cannot base a determination of lack of personal jurisdiction over a defendant upon a mere failure of the complaint to allege facts necessary to establish personal jurisdiction.

". . . there is always a possibility that the objecting defendant may have had contacts in Wisconsin not alleged in the complaint which would authorize service of the summons to have taken place outside the state."

However, we hold that admissions made in the answer and objection to personal jurisdiction filed October 15, 1971, by the defendants Advance Marketing and Howard Ginsburg are part of the record for purposes of the jurisdictional trial; the answer admits that Howard Ginsburg is an officer of Advance Marketing; admits the

corporation employs advertisements in newspapers; admits that its employees contact people who respond to these advertisements, and admits that an earnest-money deposit is placed with each application.

Sec. 262.05 (3), Stats., provides:

"262.05 **Personal jurisdiction, grounds for generally.** A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 262.06 under any of the following circumstances: . . .

"(3) LOCAL ACT OR OMISSION. In any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant." [3]

In the instant case the state of Wisconsin is suing Advance Marketing and Howard Ginsburg for fraudulent

---

[3] The revision notes to sec. 262.05 (3), Stats., by Professor G. W. Foster, Jr., 30 W. S. A. (pocket part, p. 40) state:

"Sub. (3) **Local act or omission**

"Two jurisdictional facts are required by this subsection: (i) an act or omission within the state by the defendant or his agent; and (ii) a claim of injury to person or property alleged to arise out of the local act or omission. When these facts are shown to exist, the court has a basis for personal jurisdiction over the defendant. It is not material to jurisdiction under this subsection that the consequences of the defendant's act occurred outside the state; it is the occurrence of the act in the state, not the injury, which furnishes the contact relied on for jurisdiction. Liability is not a jurisdictional fact; nor does the form of remedy affect the jurisdiction of the court. Once it is shown that the claim arises out of some local act or omission by the defendant the court acquires a basis for jurisdiction over the defendant, and any question as to the legal sufficiency of the plaintiff's claim goes to the merits of the case, not to the jurisdiction of the court over the defendant.

"The doing of an act, or causing it to be done is a substantial contact with the state. . . ."

". . . it is the occurrence within the state of the act out of which arose the claim of injury sued upon which furnishes the jurisdictional ground." (p. 40)

advertising in violation of sec. 100.18 (1), Stats. The jurisdictional facts required are (1) an act or omission within the state by the defendant, and (2) a claim of injury to person or property alleged to arise out of the local act or omission. In this case, we hold that such an act would be the placing of advertisements in newspapers circulated in Wisconsin, the contacting of persons responding to these advertisements and the taking of earnest-money deposits. These activities are admitted in the answer although wrongdoing is denied. Allegations of wrongdoing, of course, are matters for a trial on the merits and are not tried at the trial on jurisdiction. The claim of injury to person or property alleged to arise out of this act is that through the use of untrue, deceptive and misleading advertisements, statements and misrepresentations, members of the public have been and will in the future tend to be misled. This is not an issue to be tried in the jurisdictional trial but in a trial on the merits.

The testimony of Mr. Beck shows that during the time the alleged improper activities of the defendants were being carried on, Mr. Beck did in fact respond to an ad of the defendant Advance Marketing that Mr. Ginsburg discussed a contract and presented a contract for a distributorship for Advance Marketing at the home of Mr. Beck in the city of Milwaukee and that Mr. Beck later in Chicago entered into a contract and that Mr. Ginsburg was one of the signatories to the contract. The defendants point out that Mr. Beck was not one of those alleging that he had been defrauded and did not join in the action by the state for a refund. They point out that Mr. Beck did not testify that he had been defrauded or misled in any way. This type of evidence is not necessary in a jurisdictional trial.

In *Doug Sanders Golf, Etc. v. American Manhattan Industries, Inc.* (D. C. Wis. 1973), 359 Fed. Supp. 918, 921, a case involving allegations by plaintiff that it was

induced to enter a franchise contract by false and misleading statements, the court found personal jurisdiction over both the corporate defendant and nonresident-individual defendants who promoted the venture or lent their name to its promotion. Of the individual defendants, the court stated:

"This court also has jurisdiction over defendants Doug Sanders and Mitchell Nassar. Mr. Nassar promoted the venture which is the subject of this suit and consummated the contract for defendant American Manhattan Industries. Defendant Sanders promoted and/or lent his name to the promotion of this plan in the State of Wisconsin. These contacts are sufficient to create jurisdiction over their persons in Wisconsin. See Nationwide Motorists Association of Michigan v. Nationwide Motorist Association, 244 F. Supp. 490 (W. D. Mich. 1965); Lodge v. Western New York Dance Studios, 53 Misc. 2d 803, 279 N. Y. S. 2d 756 (1967). This is especially true when fraud or misrepresentation is alleged. An individual cannot induce a resident of Wisconsin to enter into a contract in Wisconsin which benefits the person making such representations and then claim immunity from suit in Wisconsin because of lack of personal jurisdiction in the state."

A recent South Dakota federal district court case, *Graber v. Prelin Industries, Inc.* (D. C. S. D. 1974), 368 Fed. Supp. 1358, 1365, 1366, involved an action against a foreign corporation and certain nonresident persons individually and as officers or directors of the corporation based on alleged misrepresentation and tortious breach of contract in relation to a multi-level distribution operated by the defendant corporation. The defendants moved to dismiss on the ground of lack of personal jurisdiction. In finding personal jurisdiction over the individual defendants, the court stated:

". . . even though only defendants Starnes and Priest were placed at promotional meetings of Prelin, defendants Brady, Hudson, and Denton, as active officers or directors

(indicated by the Certificate of Authority application, the Articles of Incorporation, and the application for registration as a multi-level distributorship) must be assumed to have sanctioned such activities, and to have been aware that the corporation had not complied with South Dakota law. As officers and directors, they would also have willingly participated in the sums of money received from plaintiffs as checks cashed by Prelin Industries."

The reasoning of the *Sanders* and *Prelin Cases* is applicable to the relationship of Mr. Ginsburg to Advance Marketing and leads to the conclusion that he is amenable to the jurisdiction of the court pursuant to sec. 262.05 (3), Stats.

The next question which must be answered is whether or not the application of that statute would violate due process in applying it to Mr. Ginsburg.

In *Zerbel v. H. L. Federman & Co.* (1970), 48 Wis. 2d 54, 64, 65, 179 N. W. 2d 872, this court laid down five tests in determining whether the requirements of fair play and substantial justice are met in an application of this type of statute. These are the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts. In addition, the court requires a showing of interest of the forum state and convenience with respect to the defendant. The court does not require that all five of these factors must be present in substantial degree for jurisdiction to be constitutionally effected.

In following *Zerbel* we consider the five elements:

(1) *Quantity of contacts.* It is clear that Mr. Ginsburg had one contact with Mr. Beck in Wisconsin. Also, as shown in the record, there is evidence from which it can be inferred that Mr. Ginsburg "as the individual who operated Advance Marketing" sanctioned the placing of advertisements. (2) *Nature and quality of contacts.* The action of the defendants leads to the conclusion that the

defendants availed themselves " 'of the privilege of conducting activities [in Wisconsin], thus invoking the benefits and protections of its laws.' " The defendants include Mr. Ginsburg. *See Zerbel* at page 66. (3) *Source of cause of action.* The cause of action arises out of Mr. Ginsburg's contacts through Advance Marketing in the state of Wisconsin. (4) *Interest of Wisconsin in the action.* It is obvious that the state of Wisconsin has an interest in this action because it has a definite interest in providing a forum for its citizens in the protection of its anti-fraudulent advertising laws. It is reasonable to conclude that it is consonant with due process tenets of "fair play" and "substantial justice" for this state to provide a forum for the protection of its interests when they are allegedly injured by activities of this defendant outside the state. *Zerbel* at page 66. In *Nagel v. Crain Cutter Co.* (1971), 50 Wis. 2d 638, 650, 184 N. W. 2d 876, this court said:

". . . a state has a special interest in the activities of nonresident defendants which actually or potentially affect many of its citizens, . . ."

(5) *Convenience.* While this factor has rarely been considered decisive, in the instant case the inconvenience for Mr. Ginsburg would not be very great since he is an Illinois resident.

Therefore, we hold that extending personal jurisdiction of the court over Mr. Ginsburg on the facts of this case under sec. 262.05 (3), Stats., satisfies the constitutional requirements of due process.

*By the Court.*—Order affirmed.