SCHMITZ, and wife, and others, Plaintiffs-Respondents, v. HUNTER MACHINERY COMPANY, Defendant-Respondent: MAYCO CRANE CORPORATION, and another, Defendants-Respondents and Third-Party Plaintiffs: F. B. KROLL A/S, and another, Third-Party Defendants-Appellants: WIPPERFURTH, Third-Party Defendant. [Case No. 76-671.]

WIPPERFURTH, and wife, Plaintiffs-Respondents, v. HUNTER MACHINERY COMPANY, INC., and others, Defendants-Respondents and Third-Party Plaintiffs: F. B. KROLL A/S, and another, Third-Party Defendants-Appellants: SCHMITZ, Third-Party Defendant. [Case No. 76-672.]

EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, and another, Plaintiffs-Respondents, v. RESERVE INSURANCE COMPANY, and another, Defendants-Respondents and Third-Party Plaintiffs: F. B. KROLL A/S, Third-Party Defendant-Appellant. [Case No. 76-673.]

Supreme Court

*Nos. 76-671, 76-672, 76-673. Argued April 30, 1979.—Decided May 30, 1979.*
(Also reported in 279 N.W.2d 172.)

For appellants F. B. Kroll A/S and Hafnia-Haand I Haand Forsikring A/S there were briefs by *Eugene O. Gehl* and *Axley, Brynelson, Herrick & Gehl*, attorneys, of Madison, and *John F. McClure* and *Arnstein, Gluck, Weitzenfeld & Minow*, of counsel, of Chicago, Illinois, and oral argument by *Eugene O. Gehl*.

A joint brief was filed by *Brian E. Butler, Susan Steingass* and *Stafford, Rosenbaum, Rieser & Hansen*, of Madison, for Mayco Crane Corporation, Tubular Structures Corporation of America and Reserve Insurance Company; and by *John F. Jenswold* and *Jenswold, Studt, Hanson, Clark & Kaufmann*, of Madison, for Hunter Machinery Company; and oral argument by *Mr. Butler* and *Ms. Steingass*.

A joint brief was filed by *Kent I. Carnell* and *Lawton & Cates*, of Madison, for Frank J. Schmitz, et al.; *James J. Murphy, Gary R. Kuphall* and *Habush, Gillick, Habush, Davis & Murphy*, of Milwaukee, for Lawrence J. Wipperfurth, et al.; and *Marvin Resnick, S. C.*, of Milwaukee, for Employers Mutual Liability Insurance Company, et al., and oral argument by *Mr. Carnell*.

BEILFUSS, C. J.   Two issues have been raised: (1) Are the jurisdictional facts, as they appear, sufficient to satisfy the Wisconsin long-arm statute; and (2) does the

exercise of personal jurisdiction over the two foreign defendants comply with the requirements of due process.

All three actions arise from a single construction accident which occurred on April 11, 1974 during the building of an addition to St. Marys Hospital Medical Center in Madison, Wisconsin. The accident happened when the supporting mechanism of the tower of the large Mayco-Kroll K 90 climbing crane failed while the crane was in the process of being lowered. The tower of the crane dropped to the lowest level and the boom fell onto the roof of the building.

The crane in question was manufactured in Denmark by the third-party defendant, Kroll, and sold in 1965 by Kroll f.o.b. Copenhagen, Denmark to Mayco Crane Corporation (Mayco), a California corporation. Mayco at that time was the sole representative in the United States and other adjacent areas. Mayco sold the crane to the defendant, Hunter Machinery Company, Inc., a heavy equipment dealer in Milwaukee. Hunter leased the crane with an option to purchase to Vogel Brothers Building Company. Vogel exercised its option to purchase and owned the crane at the time of the accident. Vogel was the general contractor for the St. Marys project and it was Vogel's employees who were injured in the accident.

The consolidated actions are variously grounded on negligence, breach of express and implied warranties and products liability. The actions are brought to recover damages for personal injuries and property loss.

The plaintiffs Frank Schmitz and Rudy Ewers, employees of Vogel, and their spouses brought an action against Hunter, Mayco and Reserve Insurance Company, Mayco's liability insurer, for injuries sustained by the two men who were working on or near the crane when the tower fell. The action alleged negligence and products liability and was commenced by filing a summons and complaint in the Circuit Court for Dane County on No-

vember 19, 1975. Employers Mutual Liability Insurance Company of Wisconsin (Employers), Vogel's worker's compensation carrier, was later joined as subrogated plaintiff by leave of the court. A total judgment of $775,000 was demanded.

The second suit arising out of the 1974 construction accident was begun on similar grounds against Mayco and Hunter in the Circuit Court for Milwaukee County by Lawrence Wipperfurth and his wife. Damages in the amount of $825,000 were demanded for injuries sustained by Wipperfurth, a Vogel employee who was inside the operator's cabin on the tower and operating the controls for raising the tower when it fell. The summons and complaint were filed on October 21, 1975. Employers Insurance of Wausau, Vogel's worker's compensation carrier for the plaintiff employee, was given notice of the institution of the action in accordance with sec. 102.29 (1), Stats.

In the third action, Employers Mutual sued Reserve Insurance Company and Mayco to recover damages for loss of the crane and other equipment, $34,850 for the amount paid by Employers to Vogel under its policy of insurance and $83,883.53 for Vogel's property losses which were not covered by insurance. Summons and complaint were served on Mayco on September 12, 1975, and filed in the Circuit Court for Milwaukee County on January 20, 1976.

In all three actions Mayco sought to implead Kroll, the Danish manufacturer of the crane, and its liability insurer Hafnia-Haand, also a Danish corporation. Both overseas corporations were duly served with copies of the summons and third-party complaints and amended third-party complaints. The allegations against the manufacturer included breach of implied warranties and strict liability in tort for a product placed in the stream of commerce in a defective condition unreasonably dan-

gerous to the user. The jurisdictional basis for the third-party complaints and amended third-party complaints was the Wisconsin long-arm statute, formerly sec. 262.05, Stats., now sec. 801.05. The third-party defendants in answers filed on May 21, 1976, denied liability and objected to the actions on jurisdictional grounds, namely, that neither Kroll nor Hafnia-Haand had the requisite contacts with the State of Wisconsin which would enable the Wisconsin court legitimately to exercise personal jurisdiction over them.

On March 1, 1976, the venue of the two actions commenced in Milwaukee County was changed to Dane County.[1] The three actions were consolidated for trial in an order entered on March 23, 1976 by WILLIAM C. SACHTJEN, Circuit Judge, on motion of defendant and third-party plaintiff Mayco.

A hearing on the jurisdictional issue was held on October 18, 1976. The court, relying on the pleadings and the testimony, rendered a decision in favor of the third-party plaintiffs.[2] The court concluded that it had personal jurisdiction over the foreign corporations, specifically deciding that both the requirements of sec. 262.05 (4), Stats. (1973), and due process requirements had been satisfied. An order denying Kroll and Hafnia-Haand's motion to dismiss the three complaints for lack of personal jurisdiction was entered on February 7, 1977. In conformity with the decision, a subsequent order of the court dated February 16, 1977 gave the

---

[1] See sec. 261.04(2), Stats. (now sec. 801.54(2)).

[2] The trial court was not explicit about the weight given the pleadings. However, it should be noted that the allegations in the pleadings "are not to be considered as evidence tending to establish jurisdiction except for the limited purpose of determining the type of action." *State v. Advance Marketing Consultants, Inc.* 66 Wis.2d 706, 713, 225 N.W.2d 887 (1975). *See also Pavalon v. Thomas Holmes Corp.,* 25 Wis.2d 540, 547, 131 N.W.2d 331 (1964).

plaintiffs in the original actions leave to amend their summons and complaints to include Kroll and Hafnia-Haand as parties defendant.

Kroll and Hafnia-Haand appeal from the order of February 7, 1977.

This case involves the application of Wisconsin's long-arm statute to an overseas manufacturer in a products liability setting. It is the position of Mayco, defendant and third-party plaintiff, that the Wisconsin court has personal jurisdiction over Kroll, the Danish crane manufacturer, and Hafnia-Haand, Kroll's liability insurer, under secs. 262.05(4)(a) and (b) and 10(b), Stats. (1973). The applicable language of this statute is as follows:

"262.05 **Personal jurisdiction, grounds for generally.** A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 262.06 under any of the following circumstances:
"...
"(4) LOCAL INJURY; FOREIGN ACT. In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury either:
"(a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or
"(b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.
"...
"(10) INSURANCE OR INSURERS. In any action which arises out of a promise made anywhere to the plaintiff or some third party by the defendant to insure upon or against the happening of an event and in addition either:
"...
"(b) The event out of which the cause of action is claimed to arise occurred within this state, regardless of where the person insured resided." (Ren. sec. 801.05, Stats.)

The burden in a jurisdictional heading is on the plaintiff to establish that under the long-arm statute the Wisconsin courts have jurisdiction over the foreign corporation.[3] Nonetheless, as was noted in *Stevens v. White Motor Corp.*, 77 Wis.2d 64, 74, 252 N.W.2d 88 (1977), "This court has indicated that statutes regulating long-arm jurisdiction are to be given a liberal construction in favor of the exercise of jurisdiction. *See Huck v. Chicago, St. P., M. & O. Ry.*, 4 Wis.2d 132, 137, 90 N.W.2d 154 (1958) ; *Flambeau Plastics Corp., supra,* at 464."

After a jurisdictional hearing held pursuant to sec. 262.16, Stats. (1973),[4] the trial court concluded in a memorandum decision that it had jurisdiction over the overseas corporations. This conclusion was based on a determination that the jurisdictional facts required by sec. 262.05(4)(b), Stats. (1973), were present. The trial court's findings must be accepted unless against the great weight and clear preponderance of the evidence.[5]

The revision notes of the Judicial Council's reporter, Professor G. W. Foster, Jr., summarize the contacts sufficient to permit the exercise of Wisconsin's jurisdiction under the long-arm statute. The notes, cited in *Fields v. Playboy Club of Lake Geneva, Inc.*, 75 Wis.2d 644, 651, 250 N.W.2d 311 (1977), declare as follows:

" 'Three jurisdictional facts are required by this subsection: (i) an act or omission outside the state by the

---

[3] *Merco Distrib. Corp. v. O & R Engines, Inc.*, 71 Wis.2d 792, 796, 239 N.W.2d 97 (1976).

[4] This section is now renumbered sec. 802.06(4), Stats. (1977).

[5] No formal findings of fact were made in this case. However, where this is so, statements of fact appearing in a memorandum decision will be accorded the status of findings of fact. *Dombrowski v. Tomasino*, 27 Wis.2d 378, 386, 134 N.W.2d 420 (1965); *Stevens v. White Motor Corp., supra,* 77 Wis.2d at 71.

defendant or his agent; (ii) an injury to person or property within the state which is claimed to arise out of the foreign act or omission; and (iii) some additional contact, not necessarily related to the injury sued on, which links the defendant to the state. . . .' Wis. Annot., 1960, p. 1234."

In this case there was an injury in Wisconsin which arose, according to the allegations in the third-party complaints, out of the acts or omissions of the Danish manufacturer outside the state. The additional contacts relied on by Mayco, as well as by the original plaintiffs who were given leave to amend their complaints to include Kroll and Hafnia-Haand in light of the trial court's jurisdictional findings, were of two kinds: solicitation and service activities carried on within the state on behalf of Kroll by distributor Mayco and subcontractor Hunter as per sec. 262.05(4)(a), Stats.; and the presence of products manufactured by Kroll and used within the state in the ordinary course of trade as per sec. 262.05(4)(b).

Testimony at the hearing provided details concerning the relationship between the corporate parties in the consolidated actions, the chain of commercial transactions which resulted in the presence of the crane within the state, and the nature, quality and quantity of Kroll's contacts with Wisconsin. Gunther Piepers, then president of Mayco, testified as follows: In 1964 Mayco entered into an exclusive agreement with Kroll to sell Kroll cranes. Mayco was Kroll's sole sales representative in the United States, Puerto Rico, Mexico and Canada from that time until the relationship was terminated in the fall of 1971. Under the terms of the agreement Mayco was to maintain an effective organization for the sale and service of Kroll cranes. Mayco further agreed to provide a satisfactory stock of spare parts and sufficient skilled personnel. Mayco was required to sell a total minimum of fifteen cranes the first year (1965). The minimum for subsequent years remained in the range of 20–25 units.

In fulfillment of the contract Mayco organized a distribution network which included about twenty independent subcontractors. Hunter Machinery Company, a heavy equipment dealer located in Milwaukee, was the only subcontractor doing business in Wisconsin.

In 1965 Mayco purchased a K 90 climbing crane from Kroll f.o.b. Copenhagen. Mayco then sold the crane (identified in its advertising literature as a Mayco-Kroll crane) to Hunter. Hunter in turn leased the crane the same year to Vogel which ultimately purchased it under an option to purchase in its rental contract. From the record it appears that the K 90 crane owned by Vogel was the only Kroll crane in Wisconsin at the time of the construction accident. This was one of approximately 40–60 Kroll cranes sold by Mayco throughout its entire sales territory from the beginning of its business relationship with the Danish manufacturer until the fall of 1971. Kroll cranes represented ten percent of all tower cranes sold in the United States during this period.

The crane involved here was shipped directly to Vogel via Baltimore in twenty-one separate packages. Two lengths of the tower were sent separately about two months after the main shipment was received. In addition to this original purchase which was valued at $36,000, over the intervening years preceding the accident Vogel ordered several thousand dollars' worth of new parts for the crane. As a general rule Vogel placed the orders with Mayco which supplied the parts from its inventory. In a few instances where Mayco did not have the necessary parts in stock in the warehouse, they were ordered from Kroll and sent by Kroll directly to Vogel.

The trial court determined that the above facts were sufficient to support the conclusion that, in the terms of the long-arm statute, "[p]roducts, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary

course of trade." Sec. 262.05 (4) (b), Stats. (1973). This court has approved the construction of sec. 262.05 (4) (b) given by the Federal District Court for the Western District of Wisconsin in *McPhee v. Simonds Saw and Steel Co.*, 294 F. Supp. 779, 782 (W.D. Wis. 1969), which stated it would

" '. . . construct Sec. 262.05 (4) to require that at the time of the injury more than one item processed, serviced or manufactured by defendant, was used or consumed within the state in the ordinary course of trade. The use of the plural ('products, materials or things') in subsection (b) indicates that more than one item processed . . . by a defendant and used . . . in the state is necessary for the exercise of in personam jurisdiction.' " *See also Hasley v. Black, Sivalls & Bryson, Inc.*, 70 Wis.2d 562, 579, 235 N.W.2d 446 (1975), and *Stevens v. White Motor Corp., supra* at 71.

The trial court reasoned that even if the twenty-one original packages of crane parts were considered one item under the above construction of the statutory language, the requisite presence of more than one item was more that satisfied in the instant case in view of the flow of replacement parts from Kroll through Mayco to Vogel in numerous separate sales transactions extending over a period of several years.

The testimony and evidence in the record reveal that the Kroll cranes and Kroll replacement parts were sold to Vogel for several years under a common commercial distribution arrangement set up between Kroll in Denmark and Mayco in the United States. The trial court's finding based on the evidence that at the time of the accident more than one Kroll product was used in Wisconsin in the ordinary course of trade, thereby placing the overseas corporation within reach of this state's long-arm jurisdiction under sec. 262.05 (4) (b), Stats.

(1973), is not contrary to the great weight and clear preponderance of the evidence.[6]

Kroll's direct and indirect contacts with Wisconsin were not confined to the sole presence of its products within the state. Mayco representatives made several trips to Wisconsin in order to promote the sale of Kroll cranes. When the crane purchased by Vogel was erected in 1965 the service manager of Mayco was sent to the job site to direct the erection. Furthermore the record contains a series of written communications between Vogel, Mayco and Kroll regarding operating problems experienced by Vogel. It is clear from the record that Kroll was aware that one of its cranes was in Wisconsin. Indeed, the manufacturer was in direct communication with the Wisconsin contractor on several occasions concerning necessary repairs and modifications to the unit. Finally, pursuant to its exclusive agreement with Kroll, Mayco maintained an inventory of Kroll crane components and engaged in ongoing sales and service activities connected with additional, separate sales to Vogel of Kroll crane parts. This activity is sufficient to satisfy the solicitation and service activity requirement of sec. 262.05 (4) (a), Stats.[7]

---

[6] In view of the facts of this case it is not necessary to reach the issue whether the sale of the crane alone, which sale involved twenty-one individual packages of component parts sold in a single transaction, would have been sufficient to satisfy the statutory requirements. The court's language in *Hasley v. Black, Sivalls & Bryson, Inc., supra,* 70 Wis.2d at 581, however, is apropos:

"The fact that the transaction by which the items entered this forum was one sale is no basis for escape from the long-arm reach. The manner of their arrival is a qualification on the exercise of jurisdiction only in that ordinary commercial practice be involved. A single sale may involve such a number of items that long-arm jurisdiction under the section arises without question."

[7] *See McPhee v. Simonds Saw and Steel Co.,* 294 F. Supp. 779 (W.D. Wis. 1969).

■

Mayco in its third-party complaint asserted that the Wisconsin court had personal jurisdiction over Kroll under both sub. (a) and sub. (b) of sec. 262.05(4), Stats. The trial court's decision denying Kroll's motion to dismiss only treated sub. (b). The facts summarized above indicate that Mayco's sales and service activities in this state on behalf of Kroll were not connected solely with one single transaction, *i.e.,* the original sale of the Kroll K 90 climbing crane to Vogel in 1965. Mayco, over a period of several years, carried on further sales and service activities relating to additional, separate sales of Kroll crane component parts. This evidence is sufficient to support a finding that the jurisdictional facts required by sec. 262.05(4) (a) (solicitation and service) are also present in this case.

■

Kroll argues that, even assuming the requirements of Wisconsin's long-arm statute are met, application of the statute in the present case violates due process requirements. The scope of the long-arm statute and "the possible infringement on the flexible reaches of due process that may occur in its application to a set of facts," *Hasley v. Black, Sivalls & Bryson, Inc., supra,* 70 Wis.2d at 575, are separate questions which this court originally treated in an extensive two-step analysis of both issues. *See Zerbel v. H. L. Federman & Co.,* 48 Wis.2d 54, 60–63, 179 N.W.2d 872 (1970).[8] A corollary to this rule has

---

[8] The due process analysis set forth in *Zerbel* based on a review of federal cases is as follows:

". . . In *International Shoe Co. v. Washington,* that court, in 1945, adopted the 'minimum contacts' test, stating:

" '[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notices of fair play and substantial justice." '

been adopted by the court in more recent cases. *Fields v. Playboy Club of Lake Geneva, Inc.*, 75 Wis.2d 644, 653–54, 250 N.W.2d 311 (1977), summarizes the current approach:

"...

"... there is little disagreement as to the standards to be met in attempting to reach a nonresident defendant through 'long-arm' statutes (as required by *International Shoe, McGee* and *Hanson*):

" ' "(1) The nonresident defendant must do some act or consummate some transaction within the forum. ... A single event will suffice if its effects within the state are substantial enough to qualify under Rule Three.

" ' "(2) The cause of action must be one which arises out of, or results from, the activities of the defendant within the forum.

" ' "(3) Having established by Rules One and Two a minimum contact between the defendant and the state, the assumption of jurisdiction based upon such contact must be consonant with the due process tenets of 'fair play' and 'substantial justice.' If this test is fulfilled, there exists a 'substantial minimum contact' between the forum and the defendant. The reasonableness of subjecting the defendant to jurisdiction under this rule is frequently tested by standards analogous to those of forum non conveniens." ' "

The court went on to list the various factors to be considered in determining whether the requirements of fair play and substantial justice have been met once a minimal contact between the defendant and the state has been established:

". . . In *Aftanase v. Economy Baler Co.* Justice BLACKMUN, then circuit judge on the Eighth Circuit Court of Appeals, stated:

" ' . . . We observe, however, that, at one time or another in the opinions, three primary factors, namely, the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts, are stressed, and that two others, interest of the forum state and convenience, receive mention.'

And he noted further"

" 'The supreme court has certainly not indicated that all five of these factors must be present in substantial degree for jurisdiction to be constitutionally effected.' " *Zerbel, supra,* 48 Wis.2d at 64–65.

"Although this court in *Zerbel v. H. L. Federman & Co.*, 48 Wis.2d 54, 179 N.W.2d 872 (1970), made a separate analysis for the purpose of determining whether the jurisdictional contacts which satisfied the statute were also sufficient as a matter of due process, we believe this additional analysis to be unnecessary in the ordinary case. We stated in *Afram v. Balfour Maclaine, Inc.,* 63 Wis.2d 702, 713, 218 N.W.2d 288 (1974):

" 'While we have adopted a methodology of appraising jurisdictional contacts (*Zerbel v. H. L. Federman & Co.* (1970), 48 Wis.2d 54, 65, 179 N.W.2d 872, and *Nagel v. Crain Cutter Co.* (1971), 50 Wis.2d 638, 648, 184 N.W. 2d 876), such analysis is unnecessary here. The standards set by sec. 262.05, Stats., if met, prima facie meet the constitutional demands of *Pennoyer v. Neff* (1877), 95 U.S. 714, 24 L. Ed. 565, and *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 Sup. Ct. 154, 90 L. Ed. 95. If the transaction has the necessary qualitative relationship to the forum as spelled out in the various subsections of sec. 262.05, the constitutional objection is prima facie at least surmounted. What is listed are situations or transactions in which it is not unfair or a denial of due process to extend Wisconsin's long arm of jurisdiction to a nonresident defendant.' "

We believe that the Wisconsin "long-arm" statute was designed to satisfy the requirements of due process and that when the facts presented fall within the requirements of the statute the assumption of jurisdiction over a foreign defendant is not constitutionally objectionable. This is not to say that under no unique or extraordinary set of facts a due process question cannot arise. This is not such a case—due process has been satisfied and we do not further consider the issue based upon the record before us.

The comment of the Ninth Circuit interpreting a tortious act statute in the case of *Duple Motor Bodies, Ltd. v. Hollingsworth,* 417 F.2d 231, 235 (9th Cir. 1969), is particularly pertinent:

"We do not regard it as offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, either directly or through the normal distributive channels of trade. If it is clearly foreseeable as a result of trade with a foreign state that injury from a defective product (if it occurs) would occur in that state, the hardship of defending the product in that state in our judgment must be assumed as an attribute of foreign trade."

Under the facts of this case both the requirements of sec. 262.05 (4) (a) and (b), Stats. (1973), and the traditional notions of fair play and substantial justice are amply satisfied.

*By the Court.*—Order affirmed.

ABRAHAMSON, J., took no part.