HOUSING HORIZONS, LLC, Kimberly-Clark Corporation, Central High Associates, LLC, LaFayette-Lahr, LLC, LaSalle Apartments, LLC, National Terminal Apartments Limited Liability Company and City Hall Square, LLC, Plaintiffs,

v.

The ALEXANDER COMPANY, INC., Alexander Redevelopment, Inc., Randall P. Alexander, and Terri L. Alexander, Defendants-Third-Party Plaintiffs-Appellants,

v.

VERKLER, INC., a foreign corporation, Third-Party Defendant-Respondent,

STONE HOUSE DEVELOPMENT, INC., a Wisconsin corporation, Third-Party Defendant.

Court of Appeals

No. 98–3635. Submitted on briefs October 8, 1999.—Decided December 9, 1999.

2000 WI App 9

(Also reported in 606 N.W.2d 263.)

178

179

On behalf of the defendants-third-party plaintiffs-appellants, the cause was submitted on the briefs of *Thomas M. Pyper, Theresa M. Hottenroth* and *Jeanne M. Armstrong* of *Whyte Hirschboeck Dudek, S.C.*, Madison.

On behalf of the third-party defendant-respondent, the cause was submitted on the brief of *Brian W. Mullins, Hugh N. Anderson* and *Mary K. Monville* of *Wickwire Gavin, P.C.*, Madison.

Before Dykman, P.J., Vergeront and Deininger, JJ.

¶ 1. DEININGER, J. The Alexander Company appeals an order dismissing its third-party complaint against Verkler, Inc., an Indiana corporation. The circuit court concluded that it lacked personal jurisdiction over Verkler because Verkler's contacts with Wisconsin were not sufficient to satisfy the requirements of the state's long-arm statute. We agree that Verkler's contacts with Wisconsin were insufficient to subject it to suit in this state. Accordingly, we affirm the dismissal order.

## BACKGROUND

¶ 2. In 1994, Housing Horizons, L.L.C., contracted with The Alexander Company, a Madison-based architectural firm, for the purpose of acquiring,

rehabilitating and managing property throughout the Midwest. Housing Horizons and Alexander selected eight specific projects and formed a separate limited liability company for each project. One of these, the National Terminal Apartments Limited Liability Company project, is the subject of this appeal.

¶ 3. The National Terminal project involved the conversion of a warehouse in Cleveland, Ohio. Housing Horizons contracted with Verkler, an Indiana contractor, to convert the warehouse into apartments by May of 1997. When it became apparent that the project would not be completed on time, Verkler's representatives traveled to Madison and met with Alexander personnel. At this meeting, the two groups discussed budget constraints, construction delays and the allocation of potential liability with regard to construction defects and delays. One week later, Verkler's representative returned to Madison to continue discussions with Alexander.

¶ 4. The working relationship between Housing Horizons and Alexander deteriorated, and in November of 1997 the two severed their business relationship. In March 1998, Housing Horizons filed suit against Alexander, alleging that Alexander was negligent in the design and construction of the National Terminal apartments. One month later, Alexander filed a third-party complaint against Verkler, alleging that Verkler was responsible for any negligent construction at the National Terminal site. Verkler filed a motion to dismiss the third-party complaint for lack of personal jurisdiction. Alexander opposed the motion, contending that the two trips to Wisconsin made by Verkler's representatives were sufficient to subject Verkler to suit in a Wisconsin court. The circuit court disagreed with Alexander's contention and granted Verkler's motion

to dismiss. Alexander appeals the dismissal of its third-party complaint.

## ANALYSIS

¶ 5. The sole issue before us is whether the circuit court had personal jurisdiction over Verkler. Whether personal jurisdiction over a defendant exists is a question of law which we review de novo. *See Brown v. LaChance*, 165 Wis. 2d 52, 65, 477 N.W.2d 296, 302 (Ct. App. 1991). Although the plaintiff bears the burden of establishing that the court has jurisdiction over a foreign defendant, statutes which provide for long-arm jurisdiction are to be construed liberally in favor of the exercise of jurisdiction. *See Schmitz v. Hunter Mach. Co.*, 89 Wis. 2d 388, 396, 279 N.W.2d 172, 175 (1979).

¶ 6. Section 801.05, STATS., Wisconsin's long-arm statute, grants courts in this state personal jurisdiction over nonresidents who conduct business in Wisconsin, commit certain acts in Wisconsin, or commit an act outside of Wisconsin which has consequences within the state.[1] *See* JAY E. GRENIG & WALTER L. HARVEY, CIVIL PROCEDURE § 105.1 (2d ed. 1994). In order to determine whether Verkler is subject to suit in Wisconsin, we must conduct a two-part inquiry. First, we consider whether Verkler's contacts with Wisconsin are sufficient to satisfy the requirements for personal jurisdiction set forth in § 801.05, STATS. *See Brown*, 165 Wis. 2d at 66, 477 N.W.2d at 303. If they are, we will

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

then consider whether the application of the statute on the present facts comports with due process.[2] *See id.*

¶ 7. Section 801.05(4), STATS., gives Wisconsin courts jurisdiction over defendants who cause injury in Wisconsin through an out-of-state act or omission. Before a court can assert jurisdiction over a defendant under this subsection, it must find that there has been both an "act or omission outside the state by the defendant or his agent" and an "injury to person or property within the state which is claimed to arise out of the foreign act or omission." *See* G.W. Foster, Revision Notes to § 262.05, STATS., *printed in* 1970 Wisconsin Annotations.[3] In addition, the court must determine that there has been "some additional contact, not necessarily related to the injury sued on, which links the defendant to the state." *Id.* The statute provides that the "additional contact" requirement is satisfied if either:

> (a) Solicitation or service activities were carried on within this state by or on the behalf of the defendant, or
> (b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.

Section 801.05(4), STATS.

---

[2] Due process requires a defendant to have certain "minimum contacts" within the state so that assuming jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *See Zerbel v. H. L. Federman & Co.*, 48 Wis. 2d 54, 60, 179 N.W.2d 872, 875 (1970) (citation omitted).

[3] Section 262.05, STATS., 1973, is the predecessor to § 801.05, STATS.

¶ 8. Alexander contends that Verkler's contacts with the state of Wisconsin are sufficient to subject it to personal jurisdiction under § 801.05(4)(a), STATS. Specifically, Alexander asserts that: (1) Verkler's participation in the National Terminal apartment project was an "act or omission outside the state"; (2) Verkler's alleged negligence caused injury to Alexander, a Wisconsin corporation, within the state; and (3) Verkler conducted "service activities" in the state of Wisconsin by sending its representatives to participate in two meetings in Madison.[4] We conclude, however, that Verkler's participation in the two meetings does not constitute "service activities . . . carried on within this state." Thus, Verkler is not subject to personal jurisdiction under § 801.05(4)(a), which is the only statutory basis for jurisdiction that Alexander asserts in this appeal.

¶ 9. "Solicitation and service activities" as used in § 801.05(4)(a), STATS., is not defined in the statute, and Wisconsin appellate courts have had few opportunities to discuss the meaning of the terms. The supreme court has applied § 801.05(4)(a) on at least

---

[4] In its opening brief, Alexander discusses only the "service activities" requirement under § 801.05(4)(a), STATS., apparently presuming that there is no dispute that the first two requirements of subsection (4) are met. In response, however, Verkler suggests that the statute's "injury to person or property within this state" requirement has not been satisfied, because no "injury to person or property" occurred within the state of Wisconsin. Verkler argues that the only "injury" sustained in Wisconsin was Alexander's financial injury stemming from Housing Horizon's claims, and that financial injury alone does not constitute "injury to person or property." Because we conclude that Verkler did not carry on service activities in Wisconsin, we do not address whether Alexander suffered "injury to person or property within this state."

two occasions, coming to opposite conclusions regarding whether a nonresident defendant had carried on solicitation and service activities in this state. The two opinions suggest that something more than isolated and fleeting encounters with the state of Wisconsin are necessary to come within the statutory language.

¶ 10. In the first, the court concluded that a Texas resident did not conduct "solicitation or service activities" in Wisconsin when his only contacts with Wisconsin involved an arrangement to have a dog sent to a Wisconsin resident as a gift. *See Lincoln v. Seawright*, 104 Wis. 2d 4, 12, 310 N.W.2d 596, 600 (1981). In reciting the facts of the case, the court specifically noted that the Texas resident "is not in the business of shipping dogs to Wisconsin or other states, nor does he ship dogs out of [Texas] with any regularity." *Id.* at 8, 310 N.W.2d at 598.

¶ 11. By contrast, the court determined that a Danish crane manufacturer had conducted "solicitation and service activities" in Wisconsin based on the following facts: (1) one of the manufacturer's cranes was located in Wisconsin; (2) the manufacturer's representatives had made "several trips" to Wisconsin to promote the sale of its products, and at least one trip to "direct" the erection of the crane; (3) the manufacturer itself had communicated with the Wisconsin crane owner on several occasions to discuss crane repairs and modifications; and (4) the manufacturer's representative "engaged in ongoing sales and service activities connected with additional, separate sales to [the Wisconsin crane owner] of [the manufacturer's] crane parts." *See Schmitz*, 89 Wis. 2d at 400, 279 N.W.2d at 177–78.

¶ 12. The analysis in *Schmitz* suggests that the "service activities" requirement of § 801.05(4)(a),

185

STATS., is not satisfied when a defendant's contacts with Wisconsin are connected with a single, isolated transaction:

> The facts summarized above indicate that [the manufacturer's representative]'s sales and service activities in this state on behalf of [the manufacturer] were not connected solely with one single transaction, i.e., the original sale of the . . . crane to [the Wisconsin crane owner] in 1965. [The representative], over a period of several years, carried on further sales and service activities relating to additional, separate sales of [the manufacturer's] crane component parts. This evidence is sufficient to support a finding that the jurisdictional facts required by sec. [801].05(4)(a) (solicitation and service) are also present in this case.

*Schmitz*, 89 Wis. 2d at 401, 279 N.W.2d at 178.[5]

¶ 13. A federal court in Wisconsin has also concluded that activities related to a single, isolated transaction are insufficient to constitute solicitation and service activities under § 801.05(4)(a), STATS.[6] In

---

[5] *Schmitz v. Hunter Machinery Co.*, 89 Wis. 2d 388, 401, 279 N.W.2d 172, 178 (1979) cites to § 262.05(4)(a), STATS., 1973, the predecessor to § 801.05(4)(a), STATS.

[6] "In general, district courts can exercise personal jurisdiction over a nonresident party only if that party would be subject to personal jurisdiction in the forum state's courts." *Cram v. Medical College of Wisconsin*, 927 F. Supp. 316, 319 (E.D. Wis. 1996). We recognize that we are not bound by a federal court's interpretation of a state statute. *See Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 400, 573 N.W.2d 842, 844 (1998). We may, however, consult federal decisions for guidance when there is a lack of controlling state precedent. *See Friendship Village v. City of Milwaukee*, 181 Wis. 2d 207, 229, 511 N.W.2d 345, 354 (Ct. App. 1993).

*McPhee v. Simonds Saw and Steel Co.*, 294 F. Supp. 779 (W.D. Wis. 1969), the distributor of a carriage and saw unit implicated in a Wisconsin industrial accident was a foreign corporation whose sole contact with the state of Wisconsin was alleged to be the sale and distribution of the unit in question. The court determined that the distributor was not subject to suit in Wisconsin because it was alleged to have sold only the one carriage and saw unit in the state. The court construed § 262.05(4)(a), STATS., 1967,[7] "to require that at the time of the injury[,] solicitation or service activities in the state *in addition to* the solicitation activity connected with the item which causes injury was carried on by or on behalf of the defendant." *McPhee*, 294 F. Supp. at 783 (emphasis added). In support of its interpretation, the court cited both the use of the plural "activities" in paragraph (4)(a), and Foster's Revision Notes to § 262.05(4), which include the following statement:

> The jurisdictional facts required by [subsection (4)] call for proof of two contacts between the defendant and the state: (i) the occurrence in the state of the injury which the defendant is claimed to have caused; and (ii) some additional contact not necessarily related to that injury.

*Id.* at 782.[8]

---

[7] *See* notes 3 and 5, above.

[8] The Wisconsin Supreme Court has approved the parallel construction the *McPhee* court gave to subsection (4)(b) of the long-arm statute (that it requires " 'that at the time of the injury more than one item processed, serviced or manufactured by defendant, was used or consumed within the state in the ordinary course of trade' "). *See Schmitz*, 89 Wis. 2d at 399, 279

¶ 14. Although Wisconsin's long-arm statute is to be liberally construed in favor of exercising jurisdiction, we cannot construe § 801.05(4)(a), STATS., so liberally as to find personal jurisdiction on the facts before us. *See Lincoln,* 104 Wis. 2d at 12, 310 N.W.2d at 600 (noting that liberal construction of a statute does not mean that a court may "ignore the language of the statute"). Our reading of the statutory language, Foster's Revision Notes and the judicial opinions which have touched on the meaning of the term lead us to conclude that the legislature contemplated something beyond isolated and fleeting contacts with our state when it enacted the "service activities" requirement of § 801.05(4)(a). The term requires that a defendant (or its representative) be engaged in some type of regular, ongoing or repetitive activities in Wisconsin.

¶ 15. Alexander can point to no regular or ongoing activities conducted by Verkler in Wisconsin as a part of its trade or business. Verkler, a construction company, entered into a contract to renovate an Ohio warehouse, and all of Verkler's construction activities took place in the state of Ohio. Verkler performed no work in Wisconsin, and only traveled to Wisconsin to discuss the National Terminal project with Alexander. The two visits were not a part of any regular or ongoing activities conducted by Verkler in Wisconsin. Rather, the visits to Wisconsin by Verkler employees were isolated events, related only to the services Verkler was performing in Ohio. Verkler thus did not carry on "service activities" in this state within the meaning of § 801.05(4)(a), STATS., and that subsection does not provide a basis for personal jurisdiction over Verkler in Wisconsin.

N.W.2d at 177 (citing *McPhee v. Simonds Saw and Steel Co.,* 294 F. Supp. 779, 782 (W.D. Wis. 1969)).

¶ 16. Alexander insists, however, that two visits to Wisconsin are enough to subject a defendant to suit here, claiming that the Seventh Circuit's reasoning in *Wisconsin Electric Manufacturing Co., Inc. v. Pennant Products, Inc.*, 619 F.2d 676 (7th Cir. 1980), supports this contention. The Seventh Circuit determined in *Wisconsin Electric* that two visits to Wisconsin by a New York equipment purchaser to inspect a Wisconsin manufacturer's facilities, and to discuss necessary changes in a system it had ordered, were sufficient to satisfy due process. *See id.* at 677. The statutory subsection under which jurisdiction was asserted in *Wisconsin Electric*, however, was § 801.05(5), STATS., not § 801.05(4), and the parties did not dispute that the requirements of subsection (5) were met. *See id.* at 677 n.5. Thus, *Wisconsin Electric* says nothing about the definition or scope of "service activities" in § 801.05(4)(a), and the case is of no assistance on the present facts.[9]

[9] Section 801.05(5), STATS., requires that the following elements be proven to establish personal jurisdiction over a defendant: "(i) a claim arising out of a bargaining arrangement made with the defendant by or on behalf of the plaintiff; (ii) a promise or other act of the defendant, made or performed anywhere, which evidences the bargaining arrangement sued upon; and (iii) a showing that the arrangement itself involves or contemplates some substantial connection with the state." *See* G.W. Foster, Revision Notes to § 262.05, STATS., printed in 1970 Wisconsin Annotations. The Seventh Circuit concluded in *Wisconsin Electric Manufacturing Co., Inc. v. Pennant Products, Inc.*, 619 F.2d 676 (7th Cir. 1980), that the defendant's two visits to Wisconsin were "significant" in the formation and performance of the defendant's contract with the Wisconsin manufacturer, and that due process was thus satisfied because the defendant had purposefully availed itself of the privilege of conducting activities in Wisconsin. *See id.* at 677–78.

**[4]**

¶ 17. We conclude that Verkler's contacts with Wisconsin are insufficient to satisfy the "service activities" requirement of § 801.05(4)(a), STATS. Alexander has therefore failed to establish that Verkler is subject to suit in Wisconsin under § 801.05(4), which is the only jurisdictional basis Alexander asserts. Because the statutory requirements of Wisconsin's long-arm statute are not met, we need not consider whether the assertion of jurisdiction over Verkler on the present facts satisfies due process.

## CONCLUSION

¶ 18. For the reasons discussed above, we affirm the order dismissing Alexander's third-party claim against Verkler.

*By the Court.*—Order affirmed.